## SUTTON *v.* FACEY.

What constituted a physician, within the meaning of the Exemption Act, (Ses. L. 1842, p. 70), and the act (Ses. L. 1844, p. 78) repealing ch. 2, tit. 8, part 1, R. S. 1838 ? *Query:*

Proof of plaintiff's having practiced as a physician is *prima facie* evidence of his professional character; and after such a *prima facie* case has been made out, a witness may be asked, " Was the plaintiff skilled in healing?" for the purpose of showing the plaintiff had no knowledge of the healing art.

Where the court charged the jury that the question, whether plaintiff was a practicing physician, had reference to the business he was engaged in, rather than to the skill with which he exercised that business : *Held,* that the charge was erroneous, as it was calculated to, and probably did, mislead the jury. Had the court stated to the jury, it had reference to the business in which the plaintiff was engaged, rather than to the *degree* of skill with which he exercised it, the jury would have understood that *some degree* of skill was necessary.

ERROR to Jackson Circuit Court. Replevin by Facey, for the unlawful detention, by Sutton, of a horse belonging to Facey. Sutton, who was a constable, justified the detention of the horse under two executions against Facey. On the trial in the circuit court, Facey insisted he was a practicing physician at the time the horse was taken, and that the same was exempted from levy and sale on the executions by the exemption act, Ses. L. 1842, p. 70. It did not appear he had any other horse; and the question was, whether he was a practicing physician within the meaning of the aforesaid act. The facts, with the charge of the court to the jury, and the rejection of certain testimony on the trial in the circuit court, are stated in the opinion of the court.

*Frink,* for plaintiff, in error.

*D. Johnson,* for defendant, in error.

*By the court,* GREEN, J. Facey, the plaintiff below, rested his claim to a recovery upon the exemption act, Ses. L. 1842, p. 70, the first section of which provides, that " to every practicing physician, one horse, bridle, saddle, surgical instruments and medicines, not exceeding in value one hundred dollars," shall be exempted from execution or sale

for any debt, damages, fine or amercement whatever; and the principal question presented, depends upon the construction to be given to the term *practicing physician*, as used in that act.

When this law was enacted, chapter 2, title 8, part 1, of the Revised Statutes of 1838, entitled " Of medical societies, and regulations concerning the practice of physic and surgery," was in force; the 8th section of which provided, that no person should commence the practice of physic or surgery within this state until he should have passed an examination, and received a diploma from one of the societies mentioned therein; and rendered any person who should practice physic or surgery within this state without first having obtained such license, incapable of suing for or collecting any charges incurred by reason of having so practiced. It is very clear that, inasmuch as no person could legally commence the practice of physic or surgery without a diploma for that purpose, while that chapter was in force, no one could be recognized as a practicing physician who should commence the practice of physic without such a diploma. There is no difficulty, therefore, in determining what class of individuals was entitled to the benefit of the exemption, when the act of 1842 became a law. An individual might then have a diploma from the state medical society or a county medical society, authorizing him to practice physic, and yet not practice, and therefore not be entitled to the benefit of the exemption. But he would in law be a physician, and, whenever he entered upon the practice of his profession, would have a right to claim the benefit of the exemption law. But no person, however learned and skilful he might be, could, by entering upon and continuing the practice of physic, become, in contemplation of law, a physician, so long as the prohibitory statute existed; and therefore could not, as such, ever entitle himself to hold property exempt from execution. Any other construction of the language of the exemption law before referred to would involve the gross absurdity of conferring a right upon an individual, based upon the violation of an express prohibitory statute.

It is claimed, on the part of the plaintiff below, that by the subsequent modification and final repeal of the law regulating the practice of physic and surgery, a more enlarged application was given to the provision of the exemption act above quoted, and that at the time when the cause of action in this case is claimed to have accrued, every per-

son who was engaged in the practice of physic, as an occupation or business, thereby became a physician, and entitled to hold a horse, &c., exempt from sale on execution.

The first section of the act numbered 38, of the Session Laws of 1843, repealed so much of sec. 8, ch. 2, title 8, part 1, of the R. S. of 1838, as rendered persons practicing physic or surgery without a license incapable of suing for or collecting charges incurred by reason of having so practiced.    Section two of that act further provides, that " if any person who professes to be a physician or surgeon, or shall hold himself out to the public or any individual employing him, to be such, shall be guilty of any neglect or malpractice, an action on the case may be maintained against such person so professing, and the rules of the common law applicable to such actions against licensed physicians and surgeons shall be applicable to such actions on the case."    This section was not repealed until the Revised Statutes of 1846 took effect, which was on the first day of March, 1847.

By the act, Ses. L. 1844, p. 73, it was provided, that in any county of this state where a medical society, composed of a majority of the physicians and surgeons of the county, should be thereafter organized on the principles of voluntary association, &c., the keeper of the prison of such county might deliver to the agent of such society the bodies of all criminals who should be executed within such county for a capital offence, &c.; and chap. 2, title 8, part 1, of the R. S. of 1838, was thereby repealed.

The last mentioned act continued in force until the R. S. of 1846 took effect.

It will thus be observed, that, from the time the exemption law was enacted, until after the trial of this cause in the circuit court, a certain class of individuals were recognized by our statutes as physicians, and that a distinction has at the same time been recognized between those who were such, in contemplation of law, and those who might profess to be physicians, and hold themselves out to the public, or persons employing them, to be such.

The horse which the plaintiff below sought to recover in this action was seized by virtue of an execution against him, in January, 1846, and in November of the same year, this cause was tried in the circuit court.    What, at that time, constituted a " physician," within the meaning of the exemption law, and the law of 1844, before referred to?

It is evident that the exemption law originally had reference, so far as it related to physicians, only to a class of persons having certain evidence of their qualifications to practice the healing art, which evidence presupposed a competent knowledge of the human system, the diseases to which it is subject, and the proper remedies for their cure or alleviation, to enable its possessor to exercise his profession successfully. By the term *physicians*, in the law of 1844, the legislature seems to have intended those who were such under the law which that act repealed. It provides no new test by which to determine what shall constitute a person a physician. It recognizes them as a known class or description of persons, by a term which had for a long time previous, and then had, a well defined legal meaning in our statutes. Under those laws, the examination, by a body of men supposed to be competent to judge of the qualifications of the applicant, and the diploma which evinced their judgment in favor of his capacity to practice the healing art, were deemed a salutary and necessary safeguard to the public against imposition and fraud, and a necessary protection of the lives of the citizens from the assaults of presumptuous ignorance and reckless cupidity.

But, at the time when the horse in question was taken by the defendant below, there were no medical societies or other bodies or persons in this state who had power to grant a diploma, evincing the possession, by any individual, of the proper qualifications to practice as a physician; and does it therefore follow, that no one could become a physician in this state after the repeal of the law regulating the practice of physic and surgery? Perhaps when we consider the object which the legislature appeared to have in view, viz: to place all those who were practicing according to different theories, and under divers systems and modes of treatment, upon an equal *footing,* a somewhat broader construction of the statutes relating to physicians, and still remaining in force, may be fairly warranted. If so, the term physician may embrace those who have received the degree of doctor of physic from some institution legally authorized to confer it. It may also include those who can show that they are such within the general and common meaning of the term. Mr. Webster, in his dictionary, defines the word " physician " to be " a person skilled in the art of healing; one whose profession is to prescribe remedies for diseases." *This definition*

Sutton *v.* Facey.

implies the possession of all the qualifications which were evidenced by the diploma under the laws as they existed in 1842, when the exemption act was passed; but whether the person be skilled in the cure of diseases by means of allopathic, homœopathic, hydropathic or botanic treatment, is not material. Skill in any of the modes mentioned, includes a competent knowledge of the human system, of the diseases to which it is subject, the symptoms by which they are detected and distinguished, and of the remedies adapted to their cure.

As to the evidence necessary to establish the character of a physician, it has been holden in an action on the case for slandering a person in his profession, where the plaintiff alleged generally that he was a physician, that parol proof of his having practiced as such was *prima facie* sufficient evidence of professional character, but subject to be overthrown by any competent evidence to the contrary, 2 Starkie's Ev. 218 and note x; and, although it has been held otherwise, the weight of authority, and the analogies of the law of evidence, seem to be in favor of this rule. But this rule assumes that practicing as such does not constitute the person a physician, but only creates a presumption of fact that he is so, until such presumption is rebutted, and indicates the same distinction between those who are physicians, and those who profess and " hold themselves out " to be such without possessing the requisite qualifications, which is recognized by the law of 1843.

In the case before us, the testimony on the part of the plaintiff in the court below, may probably have been sufficient, *prima facie*, to show that he was a physician. It showed that he had kept an office, held himself out as a physician, and been called, as such, to visit the sick; and the professions of skill on his part, as exhibited in his advertisements, were certainly most ample, and if well supported in his practice, should have secured him a most enviable reputation in his profession, and the substantial reward which great merit so richly deserves, but frequently fails to obtain.

Assuming that the meaning of the term physician, as used in the exemption act, has been enlarged by subsequent legislation, as above suggested, (but which may be considered at least doubtful,) and that the plaintiff below brought himself *prima facie* within the meaning of the statute, yet it was still competent for the defendant below to prove, if he could, that Facey was not a physician. For this purpose, Sutton intro-

duced proof that Facey admitted to Baker and others that he was not a physician, and that he said to the witness McClure that he never read a medical work. Another witness testified that Facey did not doctor his own children; and other testimony was given tending to show that he knew little or nothing of the science of medicine or the art of healing. The witness McClure, after stating that he was a practicing physician, and had been for thirty years, &c', was asked the question, " was the plaintiff skilled in healing?" which question was objected to by the counsel for the plaintiff, and the court sustained the objection, to which decision exception was taken. This ruling of the court is one of the grounds of error assigned in this court. The particular extent of the plaintiff's professional knowledge, would not have been the proper subject of inquiry: for the law furnished no standard by which it could be exactly measured. But this question did not aim at determining the *degree* of skill he might have possessed, but rather seems to have been intended to show that he had *no* knowledge of the healing art. This question, therefore, seems to have been a proper one for the purpose of eliciting evidence that Facey was not a physician.

The court charged the jury that the question, whether the plaintiff was a practicing physician, had reference to the business he was engaged in, rather than to the skill with which he exercised that business. This portion of the charge was calculated to, and probably did, mislead the jury. Had the court said it had reference to the business in which he was engaged, rather than to the *degree* of skill with which he exercised it, the jury would have understood that *some degree* of skill was necessary; but the language used by the court below implies that if Facey was occupied in the business of practicing physic, he was therefore a physician, within the meaning of the exemption law, whether he had any knowledge of diseases and remedies or not. In this portion of the charge I think the court below erred.

We are not disposed to go any further in this case than is indispensably necessary to its decision: the questions presented being new, the argument in this court having been rather meagre, and a brief having been furnished on one side only, and no references having been made by counsel to adjudged cases calculated to throw much light upon our path.

We therefore refrain from expressing any decisive opinion as to what

constituted a physician, within the meaning of the exemption act of 1842, at the time when the property in controversy in this cause was tsken by the defendant below.

Being satisfied, however, that, giving the exemption act the most enlarged construction that it can receive, the court below erred in the matters above noticed, the judgment of the circuit court must be reversed, and a new trial allowed, the costs to abide the event.

*Judgment revers :c'.*