STATE, Appellant, vs. SCHMIDT, Respondent.

*January 27—February 16, 1909.*

*Physicians and surgeons: Registration: Review of decision of Board of Medical Examiners: Who are "reputable physicians."*

1. Ch. 422, Laws of 1905, giving to the circuit courts jurisdiction to annul any certificate of registration procured from the Wisconsin State Board of Medical Examiners by fraud or perjury or issued through error of the board, does not contemplate a trial *de novo* of the questions presented to the board.  The term "error" is used therein in the sense in which it is ordinarily understood as applied to trials in courts before juries,—that is, aside from jurisdictional errors such as would render the decision void, it is confined to such absence of evidence in support of the board's decision that in no reasonable view thereof could its decision be justified, or prejudicial refusals to admit or exclude evidence, or other prejudicial misapprehensions of law.
2. The term "physician," as used in ch. 87, Laws of 1899, providing for registration of reputable resident physicians who were on July 1, 1897, in the actual practice of medicine in this state,

includes any person, of whatever school or of no known school, engaged in good faith in treating human ills by any remedy or remedies, however simple, so as to be known among the people as a physician,—especially in view of ch. 264, Laws of 1897 (referred to in the act of 1899), wherein the term is expressly defined as including every person "who shall, for a fee, prescribe drugs or other medical or surgical treatment for the cure or relief of any wound, fracture, bodily injury, infirmity or disease."

3. The term "reputable," as used in said ch. 87, Laws of 1899, means reputable in the common lexical sense, and does not necessarily imply graduation from a reputable medical college or membership in an incorporated medical society.

4. In this case a certificate of registration issued, under ch. 87, Laws of 1899, upon competent proof, to one who stated in his application that he belonged to the "physio-medical and hydropathic" school, is *held* not to have been issued through error of the Board of Medical Examiners.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

Action under ch. 422, Laws of 1905, to revoke a certificate of registration of defendant as a resident practicing physician of this state July 1, 1897, such registration being under ch. 87, Laws of 1899. The material questions raised by the pleadings were: First. Did defendant by fraud or perjury, or both, induce the Board of Medical Examiners to act favorably upon his application for registration? Second. Did the Board of Medical Examiners commit error in deciding in defendant's favor upon his application?

There was much evidence tending to show defendant, when he made his application and during the time he had held himself out as a medical practitioner, was not, in the general sense, an educated or well-trained man in the profession of medicine and surgery, or either, and that his nonprofessional education was quite limited, but that at the time of his application for registration he held a diploma of a pretended medical college, located at Chicago, Illinois, styled "The Independent College," which taught the kind of treatment called Physio-Medical Hydropathic; that of treating diseases by simple

remedies, teas of various kinds and nonpoisonous drugs of a cathartical nature, and by use of water in a great variety of ways; that he studied a considerable length of time in Germany and in this country with physicians and surgeons of the standard schools, studied also from books; attended for a time the Milwaukee Medical College; took a correspondence course with the Independent College of Chicago; attended a few lectures there; and obtained from such college its regular diploma and the degree of M. D. as a physio-medical man and hydropath. Further that he obtained from such college after it conferred upon him such, the degree of Ph. D. for presentation of an original paper on hydropathy; that when he obtained such degrees he was well posted in the physio-medical and hydropathic school and opened an office, holding himself out as a physician, and thereafter practiced according to such school. There was evidence tending to prove that the so-called Independent College had no worth-while standing, with the profession generally, at the time defendant obtained his diploma, nor thereafter, and that the Board of Medical Examiners knew that fact when they decided upon the application. There was further evidence to the effect that defendant made his application in writing under oath, as required by the rules of the board; that the application stated he was a resident practicing physician of this state July 1, 1897, of the physio-medical hydropathic school, holding the degrees of M. D. and Ph. D. from the Independent College. There was further evidence that the truth of the facts stated in the application, as to defendant having been a resident practicing physician at the time stated, according to the practice adopted by the board, was verified, as was the moral character and reputability of defendant, by the testimony of a reputable physician and a nonprofessional man, and on the faith thereof, regardless of defendant's diploma, he was registered to practice and the certificate was issued. There was no controversy on the evidence but that defendant was, on the 1st day of July, 1897,

in the business, in this state, of treating diseases by the simple methods used by his school, and no question but that, at the time of his application, he was a man of good moral character, and that the two witnesses who supported the allegations of the petition did so honestly and with general knowledge of the facts.   On this state of the case the trial court, on motion of defendant's counsel for a directed verdict in his favor, decided that the board did not commit error in deciding the application and were not imposed upon by defendant, and, accordingly, granted the motion.

For the appellant there was a brief by the *Attorney General* and *A. C. Backus,* district attorney, and *A. C. Umbreit,* of counsel, and oral argument by *Mr. Umbreit.*   They contended, *inter alia,* that under the act of 1899 only the following persons were entitled to registration: All persons versed or skilled in the art of healing, possessing some evidence of competent knowledge of the human system, the diseases to which it is subject and the proper remedy for their cure or alleviation, such evidence consisting either in a diploma from a reputable medical college, or a certificate of membership in the State Medical Society, or in some county medical society legally organized in this state, provided they possessed such evidence of qualification and were in the actual practice of medicine on the 1st day of July, 1897, and at the time they made application for registration.   *Sutton v. Facey,* 1 Mich. 243; *State ex rel. Coffey v. Chittenden,* 112 Wis. 569, 577; *State ex rel. Granville v. Gregory,* 83 Mo. 123.

*M. T. Halphide,* for the respondent.

MARSHALL, J.   Ch. 264, Laws of 1897, provided for a state board of medical examiners and required all beginning to practice medicine or surgery in this state after July 1, 1897, to first procure a certificate of qualification from such board.   It did not deal in any respect with members of the profession in actual practice in this state on such date.

Ch. 87, Laws of 1899, enlarged the scope of the board's jurisdiction by making the privilege of every person who was a resident practicing physician in this state July 1, 1897, to continue in such practice, contingent upon his obtaining a certificate of qualification from the board within a prescribed time and becoming duly registered with the board. The law prescribed, as a condition of granting the certificate, that the application should be made therefor and the applicant submit in support thereof his "diploma or other credential or evidence of qualification" and be a "reputable resident physician or surgeon of good moral character who was on the first day of July, 1897, in the actual practice of medicine or surgery in the state of Wisconsin." In mandatory language the board was required, upon such application being made by a person competent, as provided in the law, to make it and supported by the evidence of qualifications prescribed, to grant the registration and certificate.

Ch. 422, Laws of 1905, gave the circuit courts of this state jurisdiction to annul any certificate obtained as aforesaid, in case of the issuance thereof resulting from error of the board or fraud or perjury, the issues of fact to be determined by a jury, if desired by either party.

From the foregoing it will be seen that the Board of Medical Examiners, in acting upon respondent's application, was required to decide, by the exercise of *quasi*-judicial authority, first, whether respondent was, July 1, 1897, a resident physician or surgeon and actually engaged in practice in this state; second, whether he was, at the time of the application, a reputable physician or surgeon; third, whether he was a man of good moral character.

The board was left free to prescribe its own rules of procedure, governed only by the requirement that the applicant should submit the evidence of his qualification. That, in the broadest sense the language can be reasonably viewed, related to all of the three matters of fact mentioned. It might pos-

sibly be held more restrictive, but for the purposes of this
case the broader view will be taken to be the correct one.

The board made rules respecting the manner of making
applications for registration and the manner of proof, consist-
ent with the law.    There is no question that, if the jurisdic-
tion of the board was duly invoked under its rules, no error
was committed by it in entertaining the matter.    The require-
ment as to *quantum* of proof was satisfied as indicated in the
statement.  There was sworn testimony of respondent and two
others, one being a physician in good standing, as to his pro-
fessional status being as he represented it, July 1, 1897.    The
board had the further testimony of the two witnesses as to
respondent being a "reputable physician or surgeon, of good
moral character," and worthy of professional recognition.    It
had before it sworn evidence as to the college which granted
the degrees of M. D. and Ph. D. and the kind of treatment
of human infirmities respondent pretended to be skilled in,
and that was indicated by reference to the college which grad-
uated him, or pretended to have graduated him. . With all
that in hand, which comprised all proofs of the nature com-
monly required, and with a general idea that the college con-
ferring the degrees was not regarded as creditable, by physi-
cians at least of the standard schools of medicine or according
to the requirements of our statutes, the decision was made.
Not particularly upon the strength of the college being repu-
table, but upon "practice" and other proofs.

In the further consideration of this case we must appreciate
that the act of 1905 did- not contemplate a trial, *de novo,* of
the questions presented to the board.    Aside from whether it
was imposed upon by fraud or perjury, the scope of the trial
was limited, by the act, to the question of whether the board
committed error.    Just what the legislature intended by the
use, unexplained, of the word "error" may admit of some
doubt, but we are constrained to believe that the term was used
in the sense in which it is ordinarily understood as applied to

trials in courts before juries. That is, aside from jurisdictional errors in the limited sense of such as would render the decision void, it is confined to such absence of evidence in support of the board's decision that, in no reasonable view thereof, could its decision be justified, or prejudicial refusals. to admit or exclude evidence, or other prejudicial misapprehensions of law; error which might properly be denominated jurisdictional, as regards trials before *quasi*-judicial bodies,— errors which, in the general sense, are purely judicial, in the sense that a decision is binding on all concerned, till set. aside by some proper proceedings for that purpose.

Now, no claim is made but that the board exacted and received competent proof upon all questions it was called upon to decide. There can be no question but that the board was warranted in deciding as it did, unless its conception of what the term "physician" and the term "reputable" mean as used in the law is wrong. That it did not understand the term "physician," as applied to persons practicing the healing art. July 1, 1897, referred only to such as possessed that technical knowledge of the human system and knowledge of drugs and other remedies and how to administer them, commonly supposed to be possessed by members in good standing of the great. schools of medicine, is evident, because they knew, or had good reason to know, that the Independent College did not afford preparation for the profession of that sort, and they were fully informed by respondent's disclosures that he made no pretense of belonging to any other school. The board must. have supposed that a person, treating human infirmities by the remedies suggested by the term "physio-medical and hydropathic," July 1, 1897, was a "physician," within the meaning of the statute. It was in that sense respondent used the term in his application. If under the law it was proper to so use it, certainly he cannot be accused of having imposed upon the board, nor the board be rightly held to have committed error in deciding in his favor on that point.

It is a waste of time, in our judgment, to view the term "physician" from the standpoint of members of the profession belonging to the few great schools.   It may be admitted that many, and perhaps most, of them think that no other healer should be known as a "physician" or should be allowed to treat human ills for pay.   It may be further admitted that judicial and other definitions of the term may be found quite in harmony with that view.   The learned counsel for appellant refers to such, notably *Sutton v. Facey,* 1 Mich. 243. Neither need we go to the lexical definitions, where we would find a wide range, down to the simple definition, "one who administers medicine to cure disease."   That medicine includes anything, however simple, "administered in the treatment of disease," and that disease includes any kind of disorder of the human system, needs no support other than our common knowledge.

Manifestly, the legislature conceived that it was dealing with the entire class of persons known as physicians, in the broadest sense of the term, not in any narrow sense, which would favor those claiming, and perhaps entitled to, superior distinction.   The purpose was very far from that of creating a monopoly in favor of special schools of medicine.   The term was evidently used in its proper sense, that of including any person of whatever school, and whether belonging to any known school, engaged, in good faith, in treating human ills by any remedy or remedies, however simple, so as to be known among the people as a physician.

What has been said as to the legislative meaning is manifest, in our judgment, from the very fact alone that it was dealing with an existing condition which it did not intend to disturb except to the extent of weeding out disreputable and immoral characters.   But that is placed beyond all reasonable doubt by the fact that the law of 1897, to which the law of 1899 referred, expressly defined the term, making it include every person "who shall, for a fee, prescribe drugs or

*other medical or surgical treatment* for the cure or relief of any wound, fracture, bodily injury, infirmity or disease." Sec. 7, ch. 264, Laws of 1897 (sec. 1435*f*, Stats. 1898).

It follows that respondent, clearly, did not falsely pretend that he was a physician July 1, 1897, nor did the board err in deciding that he was such.

There being no question but that respondent's character for morality was amply and honestly established before the board, there is only left to be determined whether the board had the proper conception of the term "reputable," and, if so, whether it was imposed upon by false evidence as to the fact.

That the board was not imposed upon is clear, unless the term "reputable" as used in the corroborating testimony, as contended by appellant's counsel, necessarily suggests, as matter of law, graduation from a reputable medical college, or membership in an incorporated medical society under the laws of this state.

That the professional corroborating witness did not so understand the term is evident, and that the board did not so understand it is likewise evident, from the fact that it registered respondent on "practice." It did not give significance to his diploma; it did not require any specific evidence as to membership in a medical society, and its practice in that respect was the same as in cases generally, of which it had hundreds. So no fraud was committed on the board, intentional or otherwise.

Did the board commit error as to the meaning of the term "reputable"? Here is the bone of appellant's contention. The claim is not new, nor, from any worth-while standpoint of the medical profession, is it strictly reputable to insist that a physician or surgeon, however learned in fact, and however distinguished for his actual accomplishments in relieving human suffering and curing human ills, is disreputable unless he belongs to some incorporated medical society or holds a diploma from some reputable medical school. We may well

know that it is possible that there are some very eminent out-
side men, so to speak, and probably were in the infancy of the
regulation system we are dealing with, whose very shoes, in a
professional sense, neither any one of many members of in-
corporated medical societies, nor holders of diplomas from
reputable colleges, nor the faculties of such colleges, is worthy
to untie. This court has said, and other courts have said,
that the term "reputable" as used in the statute has no such
legal and technical meaning as counsel for appellant claims
for it. Therefore, until the legislature shall have unmis-
takably used it in such sense, no such meaning can be given
thereto by judicial construction.

The word "reputable" has a plain, ordinary meaning hav-
ing reference to general character for some honorable work.
Whether one is reputable or not, means whether he is worthy
of praise or not in the particular line under consideration. It
involves a mere question of fact, determinable by the com-
mon idea of men competent to judge, based on knowledge or
reasonable means of knowledge. In *State ex rel. Coffey v.
Chittenden,* 112 Wis. 569, 88 N. W. 587, this court rejected
the idea now pressed upon our attention, holding that the term
is not used in the law in any restrictive and particular sense,
but, broadly, to convey the common meaning, generally
ascribed thereto in everyday ordinary expressions calling for
its use. *People ex rel. Sheppard v. Ill. State Board,* 110 Ill.
180, is to the same effect. Reputable means reputable in the
common lexical sense and nothing else. If one is regarded
as honorable and praiseworthy as a member of the medical
profession, of whatever school, or whether classed with any
particular school, by reason of the character of his work and
his conduct professionally, he satisfies the statutory essentials
of reputability as to his particular line, though he may never
have crossed the threshold of a medical college or been a
member of any medical society.

Thus it will be seen the board, on this branch of the in-
quiry, was neither imposed upon nor did commit error.

Whether as matter of fact, as an original matter, respondent possessed the qualifications one would expect to characterize a physician or not, as before indicated, was not for the circuit court, nor is it for this court to decide. The board had full authority to inquire into the matter. If the proofs produced before it were honestly produced; if it was not imposed upon, and had evidence before it on all material points and had reasonable grounds on such evidence for its decision, as in our judgment the proofs in the circuit court established without reasonable question, then, of course, the verdict was properly directed. It is the opinion of the court that the error complained of must be held not well taken.

*By the Court.*—The judgment is affirmed.

SIEBECKER, J., dissents.