[No. 9307.     Department One.     February 7, 1911.]

C. F. Lathrop, *Appellant*, v. John C. Sundberg *et al.*,
*Respondents.*[1]

Libel and Slander—Defenses—Violation of Statute. An osteopath cannot recover damages for a libel characterizing him as a quack and charlatan, where it appears from his testimony that he was practicing osteopathy in violation of the laws of the state making it a misdemeanor to maintain an office with his name and the word "Doctor" in public view.

Same—Right to Maintain Action. One illegally advertising as a doctor cannot maintain an action for libel on the theory that he had a common law right to practice osteopathy.

Same—Complaint—Issues and Proof. Under a complaint for libel in charging an osteopath with being a quack and a charlatan, it cannot be claimed that the publication was of and concerning osteopathy as a profession, and that the damage resulted to the plaintiff as a member of that profession.

Appeal from a judgment of the superior court for King county, Gay, J., entered September 20, 1910, dismissing an action for libel, upon withdrawing the case from the consideration of the jury at the close of the plaintiff's evidence. Affirmed.

*P. W. Willett*, for appellant.

*McBurney & Cummings*, for respondents.

Gose, J.—There was a former appeal in this case. See *Lathrop v. Sundberg*, 55 Wash. 144, 104 Pac. 176, 25 L. R. A. (N. S.) 381. The complaint alleges that the plaintiff, upon the date hereafter stated, was and is an osteopath, graduated from a school of osteopathy, holding a degree of that school, and practicing his profession as such in the Eitel Building in Seattle; that about the 16th day of March, 1908, the defendants published in a newspaper in that city,

[1]Reported in 113 Pac. 574.

of and concerning him in his business and professional capacity, the following libel:

"We, the following reputable physicians and dentists, occupying offices in the Eitel Building, endeavoring to uphold the honor and dignity of our professions and desiring to encourage only the best and most desirable tenants for our office building, and thereby conserve the best interests of the public at large, are most emphatically opposed to the indiscriminate rental of offices in this building to osteopaths, neuropaths, autopaths, chiropractors, uptomtereists, unprofessional masseurs, criminal practitioners, 'medical institutes,' 'advertising specialists,' patent medicine fakers, quacks, charlatans and other fraudulent concerns. We, therefore, demand the removal of all such persons now holding offices in this building and the exclusion therefrom of all such undesirable tenants in the future;"

thereby intending to and charging him with being "a quack and a charlatan" in his business and professional capacity, and diminishing his earnings to the extent of $300 per month. His damages are laid at $75,000. Issue was joined and the case proceeded to trial. After the plaintiff had testified, the court withdrew the case from the jury, and entered a judgment of dismissal. The plaintiff has appealed.

The appellant testified that, while pursuing his calling as a barber, he read four typewritten lessons a week for fifty-two weeks from an osteopathic correspondence school, embracing the subjects of anatomy, physiology, and pathology; that with such preparation he began practicing as an osteopath in February, 1906, moved into the Eitel Building the latter part of that year, and remained there until after the publication of the article we have set forth, and that he had upon his office door the words "Dr. C. F. Lathrop, Osteopathic Physician," while in that building.

The appellant earnestly insists that he should have been permitted to offer further evidence tending to show that he is an osteopath, and that his case should have been submitted to the jury. We think the learned trial court took the correct view of the case. When he withdrew it from the jury, it ap-

peared from the testimony of the appellant himself that he was pursuing his practice in a manner forbidden by the laws of the state.    Laws 1901, page 50, § 3, makes it a misdemeanor, punishable by fine or imprisonment or by both, for a person to maintain "an office or place of business with his or her name and the words  .  .  .  'Doctor'  .  .  .  in public view," without having obtained and filed a license as provided by law.    In *State v. Pollman*, 51 Wash. 110, 98 Pac. 88, it was held that a prefix or qualifying words to the title "Physician" did not relieve a party from the penalty of the statute; that the abbreviation "Dr." offended the law to the same extent as the word "Doctor;" that the purpose of the statute is to protect the people against deception, and that "it is practitioners of the regular school rather than the others that the ill and infirm seeking relief usually expect to find when entering a room whose door has lettered upon it the name of a person preceded by the title 'Dr.' or followed by the letters 'M. D.' or 'Physician and Surgeon.' "

As we have seen, the appellant fixes his actual damages at $300 per month.    Without undertaking to define the words "quack" and "charlatan," the terms by which the appellant was characterized in the libel, it suffices to say that he was knowingly luring patients into his office by a method condemned by the penal laws of the state.    This was a fraud and imposition upon the public, and the law will afford him no redress for the loss of earnings sought to be acquired in that manner.    On the former appeal we said, speaking of the libel in question:

"Clearly this is libelous *per se*, if published of and concerning the appellant and he is engaged in a reputable practice, and that it was published of and concerning the appellant and that his practice is reputable, was distinctly alleged in the complaint."

He could not be engaged in a reputable practice while offending against the statute.    As was said in *Hargan v. Purdy*, 14 Ky. Law 383, 20 S. W. 432:

"If he was then undertaking to practice medicine in violation of the statute of the state, he could not, in contemplation of law, have been injured or sustained damage from being called an 'empiric' or 'quack;' or, at all events, he could not be heard in a court of justice to complain that words had been spoken or written of him having the simple effect to disable or deter him from violating a penal law."

See, also, *Marsh v. Davison*, 9 Paige's Ch. (N. Y.) 508.

He contends, that he had a common law right to practice osteopathy without a license; that he was libeled while pursuing that right; and that his damages should have been assessed by the jury. If he had advertised and practiced as an osteopath, that question would be presented. He further complains that, as a matter of fact, the article was published of and concerning osteopathy as a profession, and that he, as a member of that profession, was damaged. The charge in the complaint, however, is not that he was damaged by a libel against the profession of osteopathy, but that "the defendants thereby intended to and did charge the plaintiff with being a quack and a charlatan." A litigant will not be permitted to recover damages because he has been prevented from pursuing his business in violation of the laws of the state.

The judgment is affirmed.

Dunbar, C. J., Parker, Mount, and Fullerton, JJ., concur.