(No. 11275.—Reversed and remanded.)

THE PEOPLE *ex rel.* Fred W. Gage, Appellant, *vs.* JOHN SIMAN *et al.* Appellees.

*Opinion filed April 19, 1917.*

1. MEDICINE AND SURGERY—*term "practicing medicine" does not necessarily mean using drugs.* The term "practicing medicine" is not limited to the use of drugs or substances supposed to possess curative or remedial properties but includes the treatment of disease for the purpose of cure, whether such treatment involves the use of drugs or not, and, in common acceptation, anyone whose occupation is the treatment of diseases for the purpose of curing them is a physician.

2. SAME—*the word "physician," in the Vital Statistics act, includes licensed osteopaths.* Section 15 of the Vital Statistics act, requiring every physician to register his name with the local registrar of the vital statistics registration district, includes osteopathic physicians having certificates from the State Board of Health, and such a physician is entitled to have his name registered and may make the certificate of death which the act specifies shall be made by a "legally qualified physician."

APPEAL from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

SHEPARD, MCCORMICK, THOMASON, KIRKLAND & PATTERSON, for appellant.

SAMUEL A. ETTELSON, Corporation Counsel, (CHESTER E. CLEVELAND, and JAMES W. BREEN, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

We are called upon in this case to decide whether one who practices osteopathy pursuant to the certificate of the State Board of Health authorizing him to treat human ailments without the use of medicine and without performing surgical operations is a physician entitled to registration under section 15 of the act "to provide for the registration

of all births, still-births and deaths in the State of Illinois,"
etc., known as the Vital Statistics act, approved June 22,
1915. (Hurd's Stat. 1916, p. 2473.) The necessity for
this decision arises from the refusal of the proper officers
of the city of Chicago to register the name and occupation
of Fred W. Gage, a graduate of the American School of
Osteopathy at Kirksville, Missouri, who was examined and
received the certificate of the State Board of Health on
August 30, 1900, authorizing him to treat human ailments
in the State of Illinois without the use of medicine and
without performing surgical operations, and who has since
been engaged continuously in the practice of his profession
as an osteopathic physician, having complied in all respects
with the rules and regulations of the State Board of Health.
Dr. Gage filed a petition for a writ of *mandamus* requiring
the registration of his name in the manner provided by the
act. A demurrer to the petition was sustained, the petition
was dismissed and the relator appealed.

That the relator was engaged in practicing medicine is
settled by section 7 of the act to regulate the practice of
medicine in the State of Illinois (Hurd's Stat. 1916, p.
1701,) and the case of *People* v. *Gordon,* 194 Ill. 560.
Though the osteopathic physician does not use medicine or
perform surgical operations he does treat and operate on
patients for physical ailments, and but for his certificate
from the State Board of Health would be liable to the pen-
alty prescribed for practicing medicine without a license. A
physician is one versed in or practicing the art of medicine,
and the term is not limited to the disciples of any particular
school. The term "medicine" is not limited to substances
supposed to possess curative or remedial properties, but has
also the meaning of the healing art,—the science of preserv-
ing health and treating disease for the purpose of cure,—
whether such treatment involves the use of medical sub-
stances or not. In common acceptation, anyone whose oc-
cupation is the treatment of diseases for the purpose of

278 – 17

curing them is a physician, and this is the sense in which the term is used in the Medical Practice act. The term is not used in any different sense in section 15 of the Vital Statistics act, which requires every physician, midwife, undertaker and sexton to register his or her name, address and occupation with the local registrar of the vital statistics registration district in which he resides. This act requires the registration of all births, still-births and deaths, provides for the permanent and safe preservation of the records thereof, and prohibits the interment, disinterment, deposit in vault or tomb, cremation or other disposition or removal of any dead body without a permit from the local registrar of the registration district. Such permit can be issued only upon the filing of a complete and satisfactory certificate of death in accordance with the provisions of the act. Section 7 of the act requires the certificate of death to contain at least the items of the standard certificate of death approved and adopted by the United States Bureau. of the Census, and directs that the personal particulars shall be authenticated by the signature and address of the informant, who shall be the nearest of kin or other competent person acquainted with the facts, and that the medical certificate shall be made and signed by the legally qualified physician, if any, last in attendance, or, in case of a death occurring without medical attendance, by the coroner or the local registrar. The term "legally qualified physician" in this connection is not different in meaning from the term "physician" in section 15. Each means a physician authorized by law to practice medicine. The purpose of the Vital Statistics act was to provide a system of registration of births and deaths throughout the State. The qualification of the physician is only incidentally connected with the subject matter of the act, which is vital statistics. The natural source of the information for such statistics as are required is the persons in attendance at the time of birth or death and performing the services required or in a position to

have the information required. Physicians, midwives, undertakers and sextons are therefore required to register their names, addresses and occupations with the local registrar, who is required to make a return, at the close of each calendar year, to the State Board of Health of all physicians, midwives, undertakers and sextons who have been registered in his district during the preceding calendar year. The State authorizes osteopathic physicians to treat human ailments without the use of medicine and without performing surgical operations, and under such authority they may treat cases of pneumonia, gastritis, rheumatism, paralysis and other diseases. An examination is required before the certificate of authority is issued, and it is only on the theory that the examination shows the person examined to be qualified that the certificate authorizing the treatment of such ailments can be issued. If a patient dies he cannot be said to have died without medical attendance so as to authorize the coroner or local registrar to make the certificate of death, for there was in attendance a physician expressly authorized, upon satisfactory evidence of his ability, proficiency and qualifications as a practitioner, to treat the disease. If such physician is legally qualified to treat the disease there is no reason to suppose that he is not legally qualified to give the medical certificate required by the act. It would be a peculiar provision of the law that would authorize a physician to treat the disease but not to certify the death.

A proviso to section 3 of the Medical Practice act declares that only those who are authorized to practice medicine and surgery in all their branches shall call or advertise themselves as physicians or doctors. This proviso is regarded by the counsel for the appellees as sustaining the position that only persons licensed to practice medicine and surgery in all their branches are authorized to issue certificates of death. The proviso is somewhat inconsistent with the provision that treatment for any physical ailment shall

constitute the practice of medicine and which authorizes such treatment by persons not authorized to practice medicine and surgery in all their branches. It does not, however, declare that persons treating physical ailments without the use of medicine and without performing surgical operations are not physicians, but only that they shall not call themselves physicians or advertise themselves as such. We said in *People* v. *Gordon, supra,* that "the State Board of Health is authorized to divide those who desire to practice medicine in this State into two classes,—that is, those who desire to practice medicine and surgery in all their branches, and those who desire to practice any other system or science of treating human ailments without the use of medicine or instruments. Section 7 defines what shall be regarded as practicing physicians, within the meaning of the act, as including both classes." Whether the legislature can constitutionally prohibit one of these classes from publicly assuming the title of physician or doctor is a question discussed in the brief of the appellant which we do not find it necessary to decide. The appeal was brought directly to this court on the ground that if the word "physician," in sections 7 and 15 of the Vital Statistics act, means only those who are authorized to practice medicine and surgery in all their branches, then to that extent those sections are unconstitutional, and that the proviso to section 3 of the Medical Practice act is unconstitutional; but we do not find it necessary to decide those questions, since we hold that the word "physician," in the Vital Statistics act, is not limited to any particular school of medicine but includes osteopathic physicians.

The judgment of the circuit court of Cook county is reversed and the cause remanded, with directions to overrule the demurrer to the petition.

*Reversed and remanded, with directions.*