## WALDO v. POE, Collector of Internal Revenue.

(District Court, W. D. Washington, N. D. June 28, 1926.)

No. 10731.

1. Courts ⚖️265.

In absence of statute, District Court has no power to entertain original mandamus proceeding.

2. Courts ⚖️265—District Court has jurisdiction in original mandamus proceeding to compel registration of surgeon under Narcotic Act by internal revenue collector (Judicial Code, §§ 24, 264 [Comp. St. §§ 991, 1241]).

Under Judicial Code, §§ 24, 264 (Comp. St. §§ 991, 1241), District Court has jurisdiction of original mandamus proceeding to compel registration of surgeon under Harrison Narcotic Act as amended by internal revenue collector, on payment of fee, where refusal of registration was based on construction of state statute, as against contention that court will not interfere with officer's discretion.

3. Poisons ⚖️2—Osteopath held entitled to registration under Narcotic Act (Rem. Comp. Stat. Wash. §§ 10069, 10092; Harrison Narcotic Act as amended; Beeler Act, Wash. 1923, § 3).

Under Rem. Comp. Stat. Wash. §§ 10069, 10092, and in view of sections 10009–10174, osteopath licensed to practice surgery is entitled to registration as surgeon under Harrison Narcotic Act as amended, notwithstanding Beeler Act, Wash. (Laws 1923, p. 134), § 3, making possession of narcotic drugs by others than physicians and surgeons illegal.

4. Poisons ⚖️2—State statute making possession of narcotics unlawful strictly construed (Beeler Act, Wash. 1923, § 3).

Beeler Act (Wash. Laws 1923, p. 134), § 3 making possession of narcotic drugs by others than physicians and surgeons unlawful, is criminal and highly penal and must be strictly construed to accomplish its object of preventing unlawful traffic in narcotics.

5. Constitutional law ⚖️70(1)—Federal court cannot write into state penal statute limitation not placed therein by Legislature.

Federal court cannot write into state penal statute limitation not placed therein by Legislature.

Mandamus. Petition by W. E. Waldo against Burns Poe, as collector of internal revenue for the District of Washington. Writ granted.

Hugh M. Caldwell, of Seattle, Wash., for plaintiff.

Thomas P. Revelle, U. S. Dist. Atty., and Arthur E. Simon, Asst. U. S. Dist. Atty., both of Seattle, Wash., for defendant.

NETERER, District Judge. Plaintiff seeks by original mandamus to compel his registration as a surgeon pursuant to the pro-

visions of the "Harrison Narcotic Act," as amended. He states that he was licensed under the laws of the state of Washington to practice osteopathy in 1910, and in 1919 he was licensed to practice surgery; that at all times since admission to practice he has been registered by the Internal Revenue Department pursuant to the provisions of law, and qualified to procure for administration narcotic drugs; that he is actively engaged in the practice of osteopathy and in the practice of surgery, and in such practice has acquired and is maintaining and operating a large hospital in the city of Seattle; that the use of narcotic drugs as an anæsthetic is "absolutely necessary"; that he has made due application for re-registration, and registration is refused by the defendant; that he has no other adequate remedy, and will suffer irreparable loss.

The defendant admits that the plaintiff is duly registered; that he has made application in due form for renewal of registration; that he has refused registration because, under the Laws of Washington, "Beeler Act," § 3, c. 47, Laws of 1923, it is unlawful for an osteopath, or osteopathic physician and surgeon, or osteopathic surgeon, to have in his possession any narcotic drug, except upon the signed prescription of a physician regularly licensed to practice medicine and surgery, who has complied with the regulations of the department.

[1] On the trial the defendant objected to the jurisdiction of the court in original mandamus proceedings, and relies upon In re Higdon et al. (D. C.) 269 F. 150; Covington Bridge Co. v. Hagar, 203 U. S. 109, 27 S. Ct. 24, 51 L. Ed. 111. It is fundamental, unless Congress shall so provide, the District Court has no power to entertain an original mandamus proceeding. In Re Covington Bridge Co., supra, the plaintiff sought to compel the auditor of public accounts for the state to issue a warrant on the state treasury for the amount of a franchise tax collected under the authority of the laws of Kentucky. In Re Higdon et al. it was sought to compel the board of election commissioners to reopen the ballot boxes and re-count the ballots and make return to the court.

Under section 24, Jud. Code. (Comp. St. § 991), the District Court is given original jurisdiction in all cases arising under the internal revenue law, with certain exceptions; and section 264, Jud. Code (Comp. St. § 1241), gives the District Court power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of its jurisdiction. Original proceeding is recognized in Nix v. James (C. C. A.) 7 F. (2d) 590.

[2] This case differentiates itself from the first two cases, supra. The issue here is the federal revenue statute; the defendant a federal officer administering the statute and denying to the plaintiff a claimed right which has been heretofore recognized by the department over which the defendant officiates. If this court has not jurisdiction, is the plaintiff remediless, or must he violate the law and await indictment by the grand jury for administering narcotic drugs as an anæsthetic which he obtains unlawfully? He could obtain it lawfully only upon the prescription of a registered physician, and no physician could legally prescribe narcotics to the plaintiff for the purpose.

The issue is exclusively a revenue regulation, and under the pleadings raises only the qualification of the plaintiff, upon the payment of the required fee, to registration. It was so held in Starnes v. Rose (D. C.) 282 F. 336. Clearly the state court would not have jurisdiction to enforce rights claimed under a federal law, withheld by a federal officer. While there is a distinction between original and removable jurisdiction, the state court would not have original jurisdiction, and to bring the action in the state court and have it removed to this court would not confer jurisdiction upon this court; and, this being unquestionably a case arising under the internal revenue law, the objection is not well taken. Nor is the suggestion that the court will not interfere with the discretion of an administrative officer. There is no discretion in the officer where an issue is not left to his judgment. Discretion does not rest upon opinion as to the provisions of a law; the refusal in this case is the officer's judgment upon a provision of the laws of Washington, which, he says, disqualifies the plaintiff for registration. See, also, Nix v. James, District Judge, supra.

[3] It is also contended by the defendant that, while the "act" in question has not been construed by the highest court of the state, an assistant to the Attorney General has construed the act as denying to the plaintiff the qualification for registration (a copy of the opinion is attached to the answer). He cites State v. Pollman, 51 Wash. 110, 98 P. 88; Lathrop v. Sundberg, 62 Wash. 136, 33 L. R. A. (N. S.) 90, Ann. Cas. 1912C, 891, as excluding, by analogy at least, the plaintiff's qualification under section 3, c. 47, Laws of 1923, "Beeler Act." These cases were decided before osteopathy had advanced to its present status. Pollman was practicing healing contrary to the provisions of law in that she used the

word "doctor" and "physician" in advertising for healing practice, contrary to the provisions of the law. The Lathrop Case was a civil action in which the same issue was before the court. In State v. Bonham, 93 Wash. 489, 161 P. 377, L. R. A. 1917D, 996, the defendant was convicted of practicing medicine by removing tonsils and had not been licenced as a physician. The court reviewed the history of osteopathy, and while the law under which the prosecution was had was passed in 1909, the decision was made in 1916. The court said, at page 499 (161 P. 381):

"When tested by the foregoing definitions, it is manifest that the practice of osteopathy, as it was originally understood and as it was understood at the time of the enactment of our medical act, did not sanction the internal administration of medicines or the surgical use of the knife as a means for curing diseases. * * * A perusal of the successive catalogues of its schools will show that their teachings are gradually being expanded, and that the more modern of them now teach in some degree much that is taught in the older schools of medicine. The parent school has been more marked in this respect than perhaps any of them. It now teaches that in 'child birth lacerations,' in 'certain types of congenital deformities, certain kinds of tumors, etc., surgery must step in,' and that surgery must be resorted to for the removal of tissues so badly diseased or degenerated that regeneration is impossible by the process of adjustment. But this advance is modern. It was not in vogue even so late as 1909, the time of the enactment of our medical act."

Many changes have been made in the "medical acts" since 1909, and the laws in force are grouped as sections 10009–10174, Rem. C. S. Under the "Beeler Act," supra, two distinct classes are recognized—"medicine and surgery" and "osteopathy and surgery." Subjects of examination for the practice of surgery for medics and osteopaths are identical—anatomy, histology, gynecology, pathology, bacteriology, chemistry, toxicology, physiology, obstetrics, general diagnosis, and hygiene. Sections 10009 and 10057, Rem. C. S. The only difference is: To the medics is added "practice of medicine," and to the osteopaths is added "principles and practice of osteopathy."

The osteopath must "furnish evidence that he has served not less than one year as interne in a thoroughly equipped hospital which shall have had at least 25 beds for each interne devoted to the treatment of medical, surgical and gynecological diseases," and he must also have had a service of six months, or equivalent thereof, in the maternity department of the same, or some other, hospital, during which time he shall have attended or participated in the attendance of not less than six confinements. He shall furnish evidence that he has had sufficient experience in, and the practical knowledge of, pathology and the administering of anæsthetics.

Section 10069, Rem. C. S., defines osteopathy to be the "practice and procedure as taught and recognized by the regular colleges of osteopathy," and the license to practice osteopathy is a prerequisite to a license to practice surgery.

From the catalogues introduced it appears that Kansas City College of Osteopathy and Surgery, vol. 10, No. 5, May, 1926, p. 36, teaches, under the heading "Anæsthesia":

"The student will have presented to his attention all standard forms of anæsthesia, local and general. The administration of ether, chloroform, nitrous-oxide, H. M. C.—chloroform sequence, etc., will be considered. The use of cocaine and other local anæsthetics will be given deserved attention. Every student will be expected to learn the use of the hypodermic syringe for purposes of anæsthesia and analgesia."

The College of Osteopathic Physicians and Surgeons, Los Angeles, Cal., 1925–1926, pp. 42, 43, and 48, in its curriculum, gives teaching of the principles of surgical treatment and care of wounds, supplemented by service at Los Angeles City Emergency Hospital throughout the undergraduate instruction in surgery, the diagnosis of surgical cases and their care after operation; a study of methods of general anæsthesia (chloroform, ether, nitrous oxide) and of local anæsthetics (cocaine, novocaine) and their reactions and control, and of nerve blocking and spinal anæsthesia; a clinical course in anæsthetics; training in manipulative therapy; making of surgical diagnosis and operations and the after care of patients; minor surgical operations and surgical procedure by the student; and additional surgery experience at the city emergency hospital—the course being a four-year course.

The Kirksville Osteopathic College, 1925–1926, has like provisions with relation to anæsthetics, as has the Philadelphia College of Osteopathy, 1925–1926. These are recognized colleges of osteopathy.

The director of licenses exercises the power of the board of medical examiners. Section 10854, Rem. C. S. This section repeals section 8386, Rem. & Bal. Wash. (section 1, Laws of 1909, p. 677), which provided a board of medical examiners consisting of nine

members—five members from the allopathic profession, two from the homeopathic profession, and two from the osteopathic profession—a majority of whom controlled the deliberations of the board.

Section 10072, Rem. C. S., provides that on the letterheads, cards, signs, envelopes, etc., "used by those licensed by this act to practice osteopathy or osteopathy and surgery, the word 'osteopathic' shall always immediately precede the word 'physician' and if the word 'surgeon' is used in connection with said name, the word 'osteopathic' shall also immediately precede said word 'surgeon.'" By the expressed provision of the act, a practitioner in osteopathy is recognized as a "physician and surgeon" but preceding the designation "physician and surgeon," "osteopathic" is required.

By the provisions of the statutes, and so far as is known to me, in issuing licenses to practitioners of the old school, a license is issued to practice "medicine and surgery." The term "physician" is employed by the statute as a general term.

The appellate court, in Howerton v. District of Columbia, 53 App. D. C. 230, 289 F. 628, recognized an osteopath as a physician, saying:

"The science of osteopathy has become sufficiently established to justify the classification of its practitioners within the exception to the act, 'regular practicing physicians.'"

In Bandell v. Department of Health of the City of New York, 193 N. Y. 133, 85 N. E. 1067, 21 L. R. A. (N. S.) 49, in considering a New York statute requiring that every physician in the city shall register his or her name and address in the office of the bureau of records of the health department, the appellate court says:

"The controlling question presented by this appeal is whether a person duly licensed by the state to practice osteopathy is a physician within the meaning of the act of 1907 * * * regulating the practice of medicine and the sanitary code of the city of New York. * * * We think * * * it is manifest that a duly licensed osteopath is a physician * * *. The statute declares that a physician is 'a practitioner of medicine,' and that 'a person practices medicine' who holds himself out as being able to or offers or undertakes 'by any means or method to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition.' Clearly one who practices osteopathy holds himself out and offers to diagnose and treat some of the ailments mentioned in the statute, and he is not required to treat all in order to be a physician within the meaning of the statute."

In People ex rel. Gage v. Siman, 278 Ill. 256, 115 N. E. 817, the Supreme Court of the state of Illinois said:

"A 'physician' is one versed in or practicing the art of medicine, and the term is not limited to the disciples of any particular school. The term 'medicine' is not limited to substances supposed to possess curative or remedial properties, but has also the meaning of the healing art—the science of preserving health and treating disease for the purpose of cure—whether such treatment involves the use of medical substances or not."

In State v. Schmidt, 138 Wis. 53, 119 N. W. 647, the Supreme Court of Wisconsin said:

"It is a waste of time in our judgment, to view the term 'physician,' from the standpoint of members of the profession belonging to the few great schools. It may be admitted that many, and perhaps most of them, think that no other healer should be known as a 'physician' or should be allowed to treat human ills for pay * * *. Neither need we go to the lexical definitions, where we would find a wide range, down to the simple definition, 'one who administers medicine to cure disease.' That medicine includes anything, however simple, 'administered in the treatment of disease,' and that disease includes any kind of disorder of the human system, needs no support other than our common knowledge."

In Towers v. Glider & Levin, 101 Conn. 169, 125 A. 366, 40 A. L. R. 1263, a "physician" is held to include an osteopath where a statute provided that an injured employee may hire a competent physician or surgeon at the expense of his employer.

In Re Hunter, 60 N. C. 372, at page 373, the court said:

"* * * The word 'physician' * * * is derived from the Greek word, 'phusis' —nature—" and "in a restricted sense * * * means one who administers medicine to cure diseases, but, in its proper sense, it has a broader signification, and means one, who by a knowledge of the nature and structure of the human system, and of the nature and properties of substances, cures the injuries and diseases to which it is subject, * * *" as "the word 'physician' * * * includes not only 'doctors,' who administer medicine and physic, but 'surgeons' who, by a knowledge of the nature and structure of the human system, are able to amputate an injured and diseased

limb, or to extract a ball with skill and as much safety to life and as little pain as the case admits of."

The Supreme Court of Kansas in State v. Johnson, 84 Kan. 411, 417, 114 P. 390, at page 392 (41 L. R. A. [N. S.] 539), says:

" 'Osteopathy' is defined (Webster's New International Dictionary) as: 'A system of treatment based on the theory that diseases are chiefly due to deranged mechanism of the bones, nerves, blood vessels, and other tissues, and can be remedied by manipulations of these parts.' It has been judicially defined as: 'A method of treating diseases of the human body without the use of drugs, by means of manipulations applied to various nerve centers—chiefly those along the spine—with a view to inducing free circulation of the blood and lymph, and an equal distribution of the nerve forces.' Special attention is given to the readjustment of any bones, muscles, or ligaments not in the normal position. * * * 'Medicine' * * * is * * * 'the science and art dealing with the prevention, cure, and alleviation of diseases; in a narrower sense, that part of the science and art of restoring and preserving health which is the province of the physician as distinguished from the surgeon and obstetrician.' He defines 'surgery' as: 'Art or practice of healing by manual operation; that branch of medical science which treats of mechanical or operative measures for healing diseases, deformities, or injuries.' "

Section 10070, Rem. C. S., subjects all licensees to the provisions of the act in relation to vital statistics.

Section 6012, Rem. C. S., provides: "All physicians, accoucheurs, and midwives must register. It shall be the duty of all physicians in this state to register their names and post-office addresses. ° * * " Section 6032, Rem. C. S.: "Every physician, midwife and undertaker shall * * * register his or her name. * * *." No distinction is made between allopaths, homeopaths, or osteopaths, but are all included in the term "physicians."

The Washington Supreme Court in State v. Rust, 119 Wash. 480, at 488, 206 P. 33, 36, recognizes an osteopath as a "regularly qualified physician," but not a "regularly qualified physician licensed to practice medicine." The medical laws of Washington use the term "physician" in an expansive and inclusive sense, and certificates to practitioners of the old school are issued to practice "medicine and surgery" and to osteopaths, to practice "osteopathy and surgery." "Physicians" are entitled to registration, and "surgeons" are qualified for registration. Section 6289g, C.

14 F.(2d)—48

S., and amendments. The "Beeler Act" excludes from its operation "any physician" and "any surgeon."

From the curricula of the several regular osteopathic colleges and the expressed provisions of sections 10069 and 10092, Rem. C. S., there is no doubt as to the right of an osteopath licensed to practice surgery to the same recognition under the laws of Washington as the medical surgeon. The only distinction between the two classes is, the medic is a "physician and surgeon," and the osteopath is an "osteopathic physician and surgeon."

[4, 5] The "Beeler Act" is a criminal statute, highly penal, and should be strictly construed so as to accomplish the object intended—prevention of unlawful traffic in narcotic drugs. Had the intent of the Legislature in the "Beeler Act" been to withhold from the osteopath the privilege contended for, it would have been specifically stated, and the general use of the word "physician" having relation to the osteopathic practitioner would not have been employed, and the meaning of the word in other acts would have been restricted· and limited. Mr. Beeler, the author of the act, states in the record that the intention of the act was to exclude osteopathic physicians from its operation. We cannot write in the act a limitation withheld by the Legislature. This conclusion is also sustained by the construction heretofore placed upon the act by the internal revenue department since the passage of the 1923 act, supra.

The writ is granted.