[Crim. No. 2242. In Bank.—August 25, 1919.]

## In the Matter of C. G. RUST on Habeas Corpus.

[1] PHYSICIANS AND SURGEONS—PRACTICE OF OPTOMETRY—OSTEOPATHS EXCLUDED—CONSTRUCTION OF OPTOMETRY ACT OF 1913.—A person licensed to practice osteopathy is not a physician within the provision of section 10 of the act regulating the practice of optometry (Stats. 1913, p. 1093), which declares the provisions of the act shall not be construed to prevent duly licensed physicians and surgeons from treating or fitting glasses to the human eye, since the

act of 1913 regulating the practice of medicine and surgery recognizes a distinction between the two professions in providing for the issuance of separate and distinct licenses, which distinction was also recognized in prior repealed acts.

[2] ID.—PRACTICE OF OSTEOPATHY—OPTOMETRY NOT INCLUDED.—A license to practice osteopathy does not authorize the practice of optometry, since the science of osteopathy does not include the treatment or fitting of glasses to the human eye.

[3] ID.—CONSTITUTIONALITY OF STATUTE—DISCRIMINATION BETWEEN PHYSICIANS AND OSTEOPATHS NOT UNREASONABLE.—Section 10 of the Optometry Act of 1913 is not unconstitutional as being violative of article I, sections 1, 11, and 21, article IV, section 25, subdivisions 19 and 33, of the state constitution, and the fourteenth amendment of the federal constitution, on the ground that it unreasonably discriminates between the holder of a physician and surgeon's license and the holder of an osteopathic license, since the discrimination is based upon different training.

[4] ID.—PERSONAL LIBERTY OF CITIZEN NOT ABRIDGED.—The law regulating the practice of optometry is not unconstitutional on the ground that it interferes with the personal liberty of a citizen to perform the merely mechanical act of fitting glasses.

[5] ID.—REGULATION OF PRACTICE OF OPTOMETRY—VALID EXERCISE OF POLICE POWER.—A law requiring some evidence of skill as a prerequisite to fitting glasses to the human eye is a valid exercise of the police power, since the same considerations of public health which justify the requirement of a license to practice medicine and surgery and osteopathy authorizes legislation as to the practice of optometry.

APPLICATION for a Writ of Habeas Corpus originally made to the Supreme Court. Petitioner remanded.

The facts are stated in the opinion of the court.

Chas. F. Hanlon for Petitioner.

Oliver Dibble and John T. Williams for Respondent.

WILBUR, J.—Petitioner, being held under a commitment from the police court, seeks his release from the custody of the sheriff of the city and county of San Francisco. He is licensed to practice osteopathy. His license was issued March 6, 1907, under the law regulating the practice of osteopathy, passed in 1901. (Stats. 1901, p. 113.) This statute was repealed by the general Medical Act of 1907 (Stats. 1907,

p. 252), and this in turn by the Medical Act of June 2, 1913 (Stats. 1913, p. 722), which was amended in 1915 (Stats. 1915, p. 187), and in 1917 (Stats. 1917, p. 93), but petitioner's license to practice osteopathy has been continued in force by such statutes and proceedings thereunder. (Stats. 1907, p. 258, sec. 16; Stats. 1913, p. 722, sec. 21.) Petitioner was found guilty of a violation of the statute making it unlawful to engage in the practice of optometry without a license from the state board of optometry (Stats. 1913, p. 1097), which act, for convenience, we will hereafter refer to as the Optometry Act. Petitioner contends that he is a physician and is entitled to practice optometry by reason of the exceptions contained in section 10 of that act (Stats. 1913, p. 1101, sec. 10), which is as follows:

"Sec. 10. The provision of this act shall not be construed to prevent duly licensed physicians and surgeons from treating or fitting glasses to the human eye; nor to prohibit the sale of complete ready-to-wear eye-glasses as merchandise from a permanent place of business in good faith and not in evasion of this act by any person not holding himself out as competent to examine and prescribe for the human eye."

To support his contention that the practice of osteopathy is the practice of medicine, and, hence, that he is a physician, petitioner relies upon the general definition of a physician as one who practices the art of healing (citing Century Dictionary; Black's Law Dictionary), and upon cases in which those engaged in the practice of osteopathy have been held guilty of violating laws regulating the practice of medicine, such as *Bragg* v. *State*, 134 Ala. 165, [58 L. R. A. 925, 32 South. 767]. He also cites *People* v. *Siman*, 278 Ill. 256, [115 N. E. 817], where the court held that an osteopath was a physician within the meaning of the law requiring physicians to register under what was known as the Vital Statistics Act. He also claims that he is a "physician" practicing "medicine" within the meaning of the Medical Act of 1901, in force at the time his license to practice osteopathy was issued. This act provided: "Sec. 10. The following persons shall be deemed as practicing medicine or surgery within the meaning of this act. . . . 4. Those who, for a pecuniary or valuable consideration, prescribe or use any drug or medicine, appliance, or medical or surgical treatment, *or perform any operation for the relief or cure of any bodily injury or disease."* (Italics ours.)

The question is not free from difficulty, for the reason that neither the Medical Act of 1876 (Stats. 1876, p. 792) nor any of the succeeding acts (Stats. 1901, p. 56; Stats. 1907, p. 252) defines a "physician" or "surgeon" or a "physician and surgeon," or expressly provides for the license of a "physician." The optometry law of 1903 (Stats. 1903, p. 288, sec. 16), in stating the exception, is similar to that of 1913, subdivision 10, as is the amendment of 1907, section 16 (Stats. 1907, p. 63), in using the term "physician and surgeon," etc., but the amendment thereto in 1909 of section 16 uses the expression "physician *or* surgeons." (Italics ours.) There is, therefore, some basis for the claim that at the time of the issuance of petitioner's license (March 6, 1907), these terms "physician" and "surgeon," not being defined by statute, should be construed in their broad and general acceptation. However, the same legislature which adopted the optometry law of 1913 also adopted a law regulating the practice of all systems of healing. (Stats. 1913, p. 722.) By this law provision was made for the issuance of a certificate known as a "physician and surgeon's" certificate, and another to be known as a "drugless practitioner's" certificate, the latter certificate covering the right to practice osteopathy, and also continued in force all licenses previously issued under "any medical act of this state." Section 20 provided: "Nothing in this act shall be construed to prohibit the practice by any person holding an unrevoked certificate heretofore issued under or validated by any medical practice act of this state, but all such certificates may be revoked for unprofessional conduct in the same manner and upon the same grounds as if they had been issued under this act." It also provided (section 22) : "Nor shall this act be construed so as to discriminate against any particular school of medicine or surgery, or any other treatment, nor to regulate, prohibit or apply to, any kind of treatment by prayer, nor to interfere in any way with the practice of religion."

[1] For the reasons stated by the district court of appeal of the first district in deciding upon a previous application of petitioner (*In re Rust,* 35 Cal. App. 422, [169 Pac. 1050]) we hold that the provision of section 10 of the optometry law of 1913 refers to those holding a "physician and surgeon's certificate," as authorized by the Medical Act

of the same year. This construction of these two acts is, however, not altogether decisive of the question arising as to certificates issued under preceding statutes. The Medical Act of 1913 recognized the right of holders of licenses under previous "medical acts" to practice, and to that extent, in effect, continued the preceding acts in force. We think it fairly apparent, however, that the legislature has, in effect, always used the terms "physician" or "surgeon" and "physician and surgeon," as applied to those practicing medicine and surgery within the meaning of the various medical acts, as contradistinguished from the practitioners of osteopathy. For instance, the first law regulating the practice of osteopathy provided: "The system, method, and science of treating disease is hereby declared not to be the practice of medicine or surgery within the meaning of" the act of 1876, regulating the practice of medicine. The corresponding Medical Act passed by the same legislature a few days previous (Stats. 1901, p. 56) declared that those were deemed to be practicing medicine or surgery who held themselves out "as being engaged as doctors, physicians or surgeons," etc. (Stats. 1901, p. 63, sec. 16, subd. 1). We thus have the legislative declaration that an osteopath is not practicing medicine or surgery, and that "physicians" and "surgeons" are practicing medicine. The reference to the Medical Act of 1876 (repealed by the Medical Act of 1901) may be disregarded, as evidently the two acts of 1901, the osteopathic and medical acts, are to be construed together. The Medical Act of 1907 (Stats. 1907, p. 252), in which for the first time medicine and surgery and osteopathy are treated in one legislative act, is entitled, "An act regulating the practice of medicine and surgery, osteopathy," etc., and in section 2, providing for the organization of a joint board, it is provided that "Each member of the board shall, before entering upon the duties of his office . . . make oath that he is a graduate in medicine and surgery or osteopathy, and a licensed practitioner of medicine and surgery, or of osteopathy of this state," thus recognizing a distinction between "medicine and surgery" and "osteopathy" existing before its passage, and in section 6 (Stats. 1907, p. 252, sec. 6) provides for the issuance of a license to practice "medicine and surgery" and a separate and distinct license "to practice osteopathy." This distinction requiring separate and distinct licenses for the practice of medicine and

surgery and of osteopathy is maintained in the amendment of 1911 to the Medical Act (Stats. 1911, p. 1437, sec. 6). The same distinction is also made in the title to this amendment of 1911. In section 13a of the latter amendment, while we have the phrase ''pursuant to any laws regulating the license and registration of physicians, osteopathic physicians, or persons lawfully engaged in practicing any other system or mode of healing the sick or afflicted,'' we also have the phrase ''medicine, surgery, osteopathy, or any other system or mode of treating the sick or afflicted'' used nine times in that section (pages 1439, 1440), and also a provision prohibiting the use of the word ''doctor'' in any advertisement by any person as indicating or implying that he is a doctor of medicine. It follows that when the optometry law of 1903, and its amendment of 1907, and 1909, used the phrase ''physician and (or) surgeon authorized to practice under the laws of the state of California,'' the phrase is synonymous with the phrase ''licenses to practice medicine and surgery'' used in the acts regulating the practice of medicine, then a part of ''the law of California,'' and thus excludes the holder of a license to practice osteopathy, although in the broad sense of the term an osteopath may properly be said to be a ''physician.'' The phrase ''duly licensed physicians and surgeons'' used in section 10 of the optometry law of 1913 excludes osteopathic practitioners and includes those licensed to practice ''medicine and surgery'' under previous medical laws of the state. We hold, therefore, that the license of petitioner, although issued before the Optometry Act and the Medical Act of 1913, does not authorize him to practice optometry under the exception in favor of physicians and surgeons in section 10.

[2] The petitioner also contends that his license to practice osteopathy authorizes the practice of optometry because the practice of optometry is included in the practice of osteopathy, and that, therefore, the law prohibiting the practice of optometry without a license should not be construed as prohibiting that practice by one authorized so to do by a license issued under another statute, even though no express exception is contained in the statute. If it is true that the general license to practice osteopathy does authorize the practice of optometry, the point may be well taken. The statute of 1901, regulating the practice of osteopathy, does not de-

fine osteopathy, nor is the definition contained in the present state Medical Act. Webster defines osteopathy as follows: "A system of treatment based on the theory that diseases are chiefly due to deranged mechanism of the bones, nerves, blood vessels and other tissues, and can be remedied by manipulations of these parts," while optometry is defined by statute "to be the employment of any means other than the use of drugs for the measurement of the powers or range of human vision or the determination of the accommodative and refractive states of the human eye or the scope of its functions in general or the adaptation of lenses or frames for the aid thereof." Osteopathy is discussed at length in the Encyclopedia Americana, volume XI (see, also, the title "Osteopathy, Its Discovery, Development and Institutions"; Parks v. State, 159 Ind. 211, [59 L. R. A. 190, 64 N. E. 862]), and it is sufficient to say that we cannot see therefrom that the fitting and prescription of eye-glasses comes properly within the practice of that mode of healing. But petitioner's argument that osteopathy includes optometry is based rather upon legal considerations, than upon the meaning and significance of the word "osteopathy." It is argued, in effect, that the license to practice osteopathy includes all means of healing other than major surgery, or the use of drugs. This claim is based upon the statute and license issued thereunder. It is true that under the law the certificate issued to petitioner expressly provides: "This certificate does not authorize the holder thereof to prescribe or use drugs nor to perform major surgery." (See Stats. 1901, p. 114, sec. 5.) This provision was, no doubt, intended to assure what is elsewhere declared, namely, that the license to practice osteopathy should not be deemed to authorize the practice of medicine within the meaning of the state Medical Act then in force. (Stats. 1901, p. 115, sec. 9; Stats. 1876, p. 792.) It does not follow, however, that the license to practice osteopathy issued under the law of 1901 authorizes the licensee to practice every known healing art which does not involve the use of drugs, nor major surgery, including optometry. The present law authorizes the petitioner to practice osteopathy and nothing more (Stats. 1915, p. 722, sec. 21), by reason of his license issued under the law of 1901 and its registration. We cannot say that the science of osteopathy includes optometry.

[3]  Petitioner claims that if he is not authorized to prac-
tice optometry by his license to practice "osteopathy," and a
physician and surgeon is authorized to practice optometry
by his license as a "physician and surgeon," the law in ques-
tion is unconstitutional, as violative of article I, sections 1,
11, and 21; article IV, section 25, subdivisions 19 and 33 of
the California constitution, and also of the fourteenth amend-
ment of the federal constitution, because the law unreason-
ably discriminates between the holder of a "physician and
surgeon's" license and the holder of an osteopathic license.
But, as has been stated, the law under which the petitioner
received his license to practice osteopathy recognized that that
practice was separate and distinct from the practice of medi-
cine and surgery, and the requirements for a license to
practice osteopathy and for a physician and surgeon's license
have always been different.  Under the law of 1913, passed
by the same legislature that adopted the law regulating the
practice of optometry, provision was made for the issuance
of different forms of certificate, one a "physician and sur-
geon's" certificate, another a "drugless practitioner's certifi-
cate."  Those applying for the first time to practice osteopathy
were required to secure a "drugless practitioner's" certifi-
cate, while those desiring to practice medicine and surgery
were required to secure a "physician and surgeon's" cer-
tificate.  The applicant for the latter was required to have
four thousand eight hundred hours' study to his credit, in-
cluding sixty hours' study of ophthalmology, which includes
optometry, while no study of that branch was required
of the drugless practitioner.  (Stats. 1913, p. 722.)  With
some modifications these distinctions were continued by the
amendment to the Medical Act, which also expressly author-
ized the issuance of a physician and surgeon's license to the
holder of a license to practice osteopathy, upon proof that
the applicant has practiced osteopathy for four years and
upon passing "an oral, practical or clinical examination" for
a physician and surgeon's license.  (Stats. 1917, p. 105, sec.
12½.)  It also provides for the issuance of a physician
and surgeon's certificate to persons who hold a drugless prac-
titioner's certificate, upon the completion of the course re-
quired for a physician and surgeon's certificate.  (Stats.
1917, p. 102, sec. 11.)  The discrimination complained of
between the holder of the physician and surgeon's certificate

and the holder of a certificate to practice osteopathy is not unreasonable, for it is based upon different training. (See *Ex parte Whitley*, 144 Cal. 168, [1 Ann. Cas. 13, 77 Pac. 879]; *People* v. *Jordan*, 172 Cal. 391, [156 Pac. 451].)

[4] Petitioner also contends that the law regulating the practice of optometry is unconstitutional for the reason that it interferes with the personal liberty of a citizen to perform the "merely mechanical act of fitting glasses." *Bessette* v. *People*, 193 Ill. 334, [56 L. R. A. 558, 62 N. E. 215], *People* v. *Smith*, 208 Ill. 31, [69 N. E. 810], and *Martin* v. *Baldy*, 249 Pa. 253, [94 Atl. 1091], are cited as authority for this proposition. In *Bessette* v. *People, supra*, the supreme court of Illinois held an act unconstitutional which required a blacksmith to practice the business of horseshoeing for four years and to submit to an examination by a state board of examiners and pay a license fee for the privilege of exercising his calling as horseshoer. In the case of *Martin* v. *Baldy, supra*, it was held that the action of the state board of medical examiners in attempting to regulate the practice of optometry was without legal authority, for the reason that optometry was not included in the practice of medicine or surgery within the meaning of the statute, which declared it should not be lawful "for any person in the state of Pennsylvania to engage in the practice of medicine or surgery, or to hold himself or herself forth as a practitioner in medicine or surgery, or assume the title of doctor of medicine or surgery or doctor of any specific disease or diagnose diseases or to treat diseases by the use of medicine or surgery, etc." But it is conceded in that case that the practice of optometry might properly be regulated by legislative action. The case of *People* v. *Smith* does not deal with the legislative power to regulate optometry, but holds that the Medical Act of that state does not prohibit the practice of fitting and grinding of eye-glasses, or optometry. The distinction between fitting eye-glasses and horseshoes is too obvious to require comment.

[5] We find nothing in these latter cases which would indicate that a law requiring some evidence of skill as a prerequisite to fitting glasses to the human eye is not a valid exercise of the police power. The same considerations of public health which justify the requirement of a license to practice medicine and surgery and osteopathy authorizes the legislation in question. It is, therefore, a valid exercise of

CLXXXI Cal.—6

the police power of the state.   (See *Dent* v. *West Virginia,*
129 U. S. 114, [32 L. Ed. 623, 9 Sup. Ct. Rep. 231, see, also,
Rose's U. S. Notes]; *Ex parte Whitley, supra; People*
v. *Jordan, supra.*)

The finding of the court in this case is that the petitioner
"adjusted various lenses to the eyes of said Knox and finally
fitted glasses to his eyes and sold the same to him"; that he
was "guilty of a misdemeanor, to wit: the practice of op-
tometry without having a license for so doing," etc.  The
law prohibits such conduct, and is constitutional.

The petitioner is remanded.

Lennon, J., Shaw, J., Lawlor,. J., Melvin, J., and Olney,
J., concurred.