[No. 16721. *En Banc.* April 10, 1922.]

THE STATE OF WASHINGTON, *Respondent,* v.
CLAUDE D. RUST, *Appellant.*[1]

PHYSICIANS AND SURGEONS (4-1, 5)—REGISTRATION OR LICENSE—
STATUTES—"OSTEOPATHS"—OPTOMETRY. Section 15 of the Optometry
Act [Rem. Comp. Stat., § 10159] excepting from its operation "any
regularly licensed oculist or physician who is regularly licensed to
practice medicine," has no application to osteopathic practitioners,
who, under the history of the legislature of the state are not regu-
larly licensed to practice medicine.

SAME (4-1, 5). The practice of osteopathy does not include the
practice of optometry, although an osteopath may treat the eye
osteopathically.

Appeal from a judgment of the superior court for
Pierce county, Askren, J., entered April 29, 1921, upon
a trial and conviction of practicing medicine without
a license. Affirmed.

*Hayden, Langhorne & Metzger,* for appellant.
*J. W. Selden* and *Earl V. Clifford,* for respondent.

MITCHELL, J.—The appellant, Claude D. Rust, was
informed against in the superior court of Pierce county
for the crime of practicing optometry, on or about
January 16, 1921, without first obtaining a certificate
of registration or other permit from the state board
of examiners and filing the same with the county clerk,
he not being a regularly qualified oculist or physician
who is regularly licensed to practice medicine in this
state, and more especially did practice optometry by
displaying an advertisement in the Tacoma Sunday
Ledger setting himself forth as an eye specialist. A
copy of the advertisement is in evidence wherein, in
substance, he declared himself as "The people's eye

[1]Reported in 206 Pac. 33.

specialist," that he had "reduced prices on all eye-glasses," advertised different kinds of eyeglasses and their mountings, stated therein "all work absolutely guaranteed" and signed "Dr. Rust," giving his office location in the city of Tacoma. To the information he entered a plea of not guilty, waived a jury trial, submitted the case on testimony that practically amounted to an agreed statement of facts; and from a judgment of guilty and the imposition of a fine of $25, this appeal has been prosecuted.

The essential facts alleged were proved without dispute. The defense was and is that he is the holder of a valid unrevoked license to practice osteopathy, dated July 10, 1909, that he was practicing as an osteopathic physician and falls within the provision of § 15, Laws of 1919, p. 405, of the optometry act.

There is but one assignment of error, and that is "adjudging the defendant guilty and imposing a fine of $25.00."

The optometry law is found at ch. 144, Laws of 1919, p. 396. It is entitled "An act defining the practice of Optometry, providing for the regulation of the same, creating a Board of Examiners and providing penalties for the violation thereof." Certain portions of the act, material here, are as follows:

"Section 1. Any person shall be deemed to be practicing optometry within the meaning of this act, who shall in any manner, except as provided in section 15 of this act, 1st, display any sign, circular, advertisement or device purporting or offering to in any manner examine eyes, test eyes, fit glasses, adjust frames or setting himself or herself forth as an optometrist, optician, specialist, optical specialist, eyesight specialist or refractionist, with intent to induce people to patronize himself, herself, or any other person; 2d, who shall make in any manner a test or examination of the

eye or eyes of another, to ascertain the refractive, muscular or pathalogical condition thereof; 3d, who shall in any manner adapt lenses to the human eye for any purpose either directly or indirectly." Laws of 1919, p. 396.

Section 2, p. 396, makes it unlawful to practice optometry without first obtaining a certificate of registration or permit from the board of examiners. Section 3, p. 396, creates the state optometry board, to be composed of three regularly registered optometrists. Section 4, p. 397, defines the duties and powers of the board. Section 5, p. 400, prescribes the qualifications of and the manner of the examination of applicants. Section 6, p. 400, makes it the duty of each county clerk to keep an "Optometry Register" for the registration of each optometrist who presents a certificate from the board of examiners. [See Rem. Comp. Stat., §§ 10148 to 10151.]

Section 15 of the act is as follows:

"Nothing in this act shall be construed to pertain in any manner to the practice of any regularly qualified oculist or physician, who is regularly licensed to practice medicine in the state of Washington, nor to any person who in the regular course of trade, sells or offers for sale, spectacles or eyeglasses as regular merchandise without pretense of adapting them to the eyes of the purchaser, and not in evasion of this act." Laws of 1919, p. 405, § 15. [Rem. Comp. Stat., § 10159.]

In his brief appellant says: "The question then that comes to this tribunal for solution is simple in the extreme: It is this: Is a duly licensed osteopathic physician 'a regularly qualified physician' within the meaning of the proviso in Section 15, *supra,* of the optometry act?"

As we understand the real inquiry, that contention is wrong. On the contrary, the question in the case is this: Is one who is duly licensed to practice osteop-

athy embraced within the words "the practice of any regularly qualified oculist or physician, *who is regularly licensed to practice medicine* in this state," found in § 15 of the act?

The manifest difference between the two statements, or forms of questions, indicates the essential error into which we think the appellant has fallen, and because of which many authorities cited by him to ascertain a proper definition of the word "physician" are not helpful here. Nor are we persuaded, as helpful to the appellant, by the quotation from *State v. Bonham,* 93 Wash. 489, 161 Pac. 377, L. R. A. 1917D 996, viz.:

"The purpose of osteopathy is to heal the sick, and it is not denied that the treatment it affords, even in its most restricted use, falls within the generic meaning of the terms 'medicine and surgery.'"

We are not persuaded because immediately following the quoted language this court said:

"But the question here is not this. It is much more narrow. It is, rather, did the appellant's certificate of practice authorize him to resort to the form of treatment he resorted to in the particular instance. It is our conclusion that it did not."

It is entirely clear that the reason for the conclusion reached in that case upholding the conviction of the defendant was as stated therein,

"The statute makes it plain, we think, that its framers regarded the practice of medicine and surgery and the practice of osteopathy as separate and distinct methods of treating the sick and afflicted, and intended to confine the practitioners of each to the particular system he professed to practice;"

And so it must be reasoned in this case. The question here is not whether one licensed to practice as an osteopath may heal the sick, or employ a treatment that falls within the generic terms "medicine and

surgery." It is much more narrow. It is, rather, did the license or certificate which the appellant held to practice osteopathy qualify him as an oculist or physician who was *regularly licensed to practice medicine* within the meaning and intent of § 15 of the optometry act?

Nor do we find any help in the case of *People v. Gordon,* 194 Ill. 560, 62 N. E. 858, 88 Am. St. 165, relied on by the appellant. It was a case wherein "all the testimony tends to show that he practiced what is known as osteopathy—at least the treatment was of that nature." The medicine and surgery act of that state (Ill.) authorized the state board of health "to divide those who desired to practice medicine into two classes, that is, those who desired to practice medicine and surgery in all their branches, and those who desired to practice any other system or science of treating human ailment without the use of medicine or instruments." The defendant in the case had no license of any kind, and his defense was that he had not used any instrument, drug, medicine or material remedy of any kind, and hence had not practiced medicine within the terms or intent of the law. But the court held otherwise, because of § 7 of the act which provided: "Any person shall be regarded as practicing medicine, within the meaning of this act, who shall treat or profess to treat, operate on or prescribe for any physical ailment or any physical injury to, or deformity of, another:" (Laws of Ill. 1899, p. 275.) The conclusion reached in that case was clearly warranted upon a proper construction of the statutes involved. Other cases cited by appellant are to the same general effect and afford no light other than that already apparent that consideration must, after all, be given to the terms of the applicable statutes of this state.

The legislature of this state refused to recognize the merits and progress of the osteopathic school as a mode or system for the treatment of the sick and afflicted until the year 1909. In that year a law was enacted, Laws of 1909, ch. 192, p. 677; Rem. Code, § 8386 *et seq.* (P. C. § 3727 *et seq.*), entitled "An act for the regulation of the practice of medicine and surgery, osteopathy, and other systems or modes of treating the sick or afflicted, in the State of Washington, and for the appointment of a board of medical examiners, in the matter of said regulation, and declaring an emergency." The act provided for the appointment of a board of medical examiners consisting of nine members, five of whom should be chosen from the regular profession, two from the homeopathic profession, and two from the osteopathic profession. The board was given power to issue certificates to those entitled to engage in the art of healing. Three forms of certificate were provided for: "First, a certificate authorizing the holder thereof to practice medicine and surgery; second, a certificate authorizing the holder thereof to practice osteopathy; third, a certificate authorizing the holder thereof to practice any other system or mode of treating the sick or afflicted not referred to in this section." In § 20, p. 688, of the act it was provided that the holders of certificates should "use no deception in the use of titles of his or her mode of treating the sick, but shall use only such titles as are designated by his or her diploma; or those not having a diploma shall use only such title as he or she holds license to practice." Thus it appears that, in the title of the act, and in those portions of the body of the act pertaining to the forms of certificates or licenses issued and the manner in which the practitioner should hold himself forth to the public, there

was a complete segregation or classification of the different schools—the one to practice medicine and surgery, another osteopathy, and another any other system or mode of treating the patient. It was under this law the appellant was licensed to practice osteop-athy. It is worthy of notice that the same legislature that denominated the practice of those of the regular profession as the practice of medicine and surgery, the practice of those of the osteopathic profession as the practice of osteopathy, and all others treating the sick in still another class, later on at ch. 235, p. 850, Laws of 1909, enacted the first law of this state regu-lating the practice of optometry, and that § 13, p. 855, of the act is in legal effect the same as § 15 of the cur-rent optometry law of 1919, hereinbefore quoted. [Rem. Comp. Stat., § 10159.]

In 1919, the legislature made other advances. It created four licensing boards, each acting independ-ently of all others for the licensing of those engaged in the treatment and healing of the sick or afflicted. One issues licenses to practice medicine and surgery (ch. 134, p. 372 [Rem. Comp. Stat., § 10008] ) ; another one issues licenses to practice osteopathy or osteopathy and surgery (ch. 4, p. 4 [Id., § 10056]) ; another one issues licenses to practice chiropractic (ch. 5, p. 18 [Id., § 10098]) ; and still another for the regulation of the practice of drugless healing (ch. 36, p. 64 [Id., § 10112]). Following all of these acts, the same legis-lature enacted the present optometry law.

Chapter 4 is entitled "An act to regulate the system, method or science of healing known as osteopathy . . ." Section 19, p. 17, of the act provides:

"This act shall not be construed to apply in any manner to any other system or method of treating the sick or afflicted . . ." [Rem. Comp. Stat., § 10071.]

Section 20, p. 17, provides: "On all cards, signs, letter heads, envelopes and bill heads used by those licensed by this act to practice osteopathy or osteopathy and surgery the word 'osteopathic' shall always immediately precede the word 'physician,' and if the word 'surgeon' is used in connection with said name, the word 'osteopathic' shall also immediately precede said word 'surgeon.'" [Rem. Comp. Stat., § 10072.]

Chapter 134, *supra*, is entitled "An act relating to the practice of medicine and surgery, amending sections  . . .  of Remington & Ballinger's Annotated Codes and Statutes of Washington." Section 3, p. 373, of the act prescribes the qualifications required for certification; among other things, a diploma issued by some legally chartered medical school, the requirements of which shall have been at the time of granting the diploma in no particular less than those prescribed by the Association of American Medical Colleges for that year, etc., and further provides for only one form of certificate or license. The section further says:

"Upon compliance with the requirements of this act by an applicant for a license to practice medicine and surgery in this state, the board shall issue such certificate, authorizing the holder thereof to use drugs or what are known as medicinal preparations in or upon human beings and to sever or penetrate the tissues of human beings and to use any and all other methods in the treatment of diseases, injuries, deformities, or other physical or mental conditions." [Rem. Comp. Stat., § 10008.]

The authority given by this form of license covers a field that is all inclusive, while that of each of the other kinds of practitioners is limited in its scope.

The declaration in § 15, *supra*, of the optometry act is couched in language that was familiar to the legislature. It refers to a class created by it and describes

that class in distinguishing terms of its own selection. It cannot be construed as sufficiently elastic to except from the general provisions of the act one who is only a regularly qualified physician in the state of Washington, nor any regularly qualified physician who is regularly licensed to practice osteopathy. It does not say so. On the contrary, it is clear and unambiguous, for it says: "Any regularly qualified oculist or physician, who is regularly licensed to practice medicine in the state of Washington." The words are plain of what was intended, if we but consider they were used by a body that had lately so often declared what it meant by these words.

Somewhat as a departure from, although akin to what was claimed to be the sole question in the case, it appears to be further contended by the appellant that he should be held not guilty because the acts committed by him were permissible under his license to practice osteopathy, notwithstanding the optometry act. If it be allowed that, without an exception, the optometry law is not enforcible against one who is otherwise authorized to practice it, which we do not here decide, still, under the facts in this case and the law as we view it, the judgment must stand.

The act of 1919 regulating the practice of osteopathy does not define the method or science except by reference. That reference is answered, however, we think, by the case of *State v. Bonham, supra,* and the more recent case of *In re Rust,* 181 Cal. 73, 183 Pac. 548. The California case was strikingly similar to the present one, indeed, almost exactly like it. It was a case of the conviction of a licensed osteopathic doctor for violating the optometry act of that state without his being a registered optometrist. The statute of that state regulating the practice of osteopathy, like ours,

did not define osteopathy. The optometry act of California contained an exception in favor of duly licensed physicians and surgeons, and it was claimed by the defendant that he came within the exception. But the court held against him for the reasons, as given by the court, that the medical act provided that osteopaths be given a different kind of certificate from those issued to physicians and surgeons, and because of prior legislation in which osteopaths were placed on a different basis than physicians and surgeons. In that case it was also contended, just as it seems to be here, "that his license to practice osteopathy authorizes the practice of optometry because the practice of optometry is included in the practice of osteopathy." But the point was decided against him, in a well-reasoned opinion which we adopt without a detailed analysis of it.

The evidence in this case shows that osteopathy embraces a full course on the ear, eye, nose and throat, and that is the extent of the proof on the subject. That study is necessary, of course, to prepare one to properly treat those organs osteopathically. But that practice or treatment is not optometry as defined by our statute, nor is it the kind of act for which the appellant was convicted.

Affirmed.

ALL CONCUR.