[No. 46279.   En Banc.   December 31, 1980.]

THOMAS E. WOODSON, *Petitioner,* v. THE STATE
OF WASHINGTON, ET AL, *Respondents.*

*John M. Rosellini* and *MacDonald, Hoague & Bayless,* by *Harold H. Green* and *Robert C. Randolph,* for petitioner.

*Slade Gorton, Attorney General,* and *Roger A. Gerdes, Assistant,* for respondents.

STAFFORD, J.—The sole issue in this case is whether the license held by petitioner Thomas Woodson, an osteopathic physician, prevented him from prescribing, dispensing and administering drugs. The Court of Appeals affirmed the trial court's order granting partial summary judgment in favor of defendants and concluded Woodson was not so authorized. *Woodson v. State,* 22 Wn. App. 499, 589 P.2d 828 (1979). We affirm.

Since 1946 petitioner Woodson has held a "certificate to practice osteopathy" granted pursuant to Laws of 1919, ch. 4. It appears this is the only such limited certificate presently being used in this state. For some years he has limited his practice to weight control, operating clinics in Seattle, Everett and Prosser. The vast majority of his patients were prescribed various pharmaceuticals including amphetamines, barbiturates, and related drugs. Six- to eight-week supplies were dispensed by Woodson or his staff, which, although it included no registered nurses or licensed practical nurses, was also allowed to administer injections.

On January 15, 1973, the Attorney General informed the State Board of Pharmacy that Woodson's license did not permit him to prescribe or administer drugs in his practice. Partially as a result of the letter Woodson experienced various difficulties with federal drug enforcement authorities. After the federal proceedings were terminated in Woodson's favor, he brought the present action against the State, the Board of Pharmacy, the Division of Professional Licensing, the Attorney General, and two assistant attorneys general (hereinafter referred to collectively as the State). The State was granted partial summary judgment

on its affirmative defense that Woodson was not authorized by state law to dispense and administer drugs.

Since we here review an order granting partial summary judgment, we must decide whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Fahn v. Cowlitz County,* 93 Wn.2d 368, 372–73, 610 P.2d 857 (1980); *Sarruf v. Miller,* 90 Wn.2d 880, 586 P.2d 466 (1978).

The material facts on which the trial court based its conclusion in support of summary judgment in this case are not essentially in dispute. Rather, the parties disagree on the legal conclusions to be drawn therefrom, and more particularly, on the construction to be given various legislative enactments on the subject of osteopathy and the practice of internal medicine and use of drugs.

The legislature first dealt with the licensing of osteopaths in Laws of 1909, ch. 192, § 6, p. 679. Only one type of certificate was authorized, that being a "certificate to practice osteopathy". Osteopathy was not defined.

The question whether an osteopath licensed under the 1909 statute could perform surgery and administer drugs first came before us in *State v. Bonham,* 93 Wash. 489, 161 P. 377 (1916). That case clearly demonstrated the court's understanding that osteopathy included neither the practice of surgery nor the prescribing or administering of drugs. To determine the healing methods included within the term "osteopathy", the *Bonham* court considered numerous sources, including statements in current course catalogs issued by schools of osteopathy, the "definition and description" given by the founder of the practice, dictionary definitions, and decisions of other courts. We concluded:

> When tested by the foregoing definitions, it is manifest that the practice of *osteopathy,* as it was originally understood and as it was understood at the time of the enactment of our medical act, *did not sanction the*

*internal administration of medicines* or the surgical use of the knife as a means for curing diseases.

(Italics ours.) *Bonham,* at 499.

Apparently in recognition of subsequent advances in the practice of osteopathy, the legislature again addressed the licensing of osteopaths in Laws of 1919, ch. 4. The 1919 statute differed from the 1909 law in two respects relevant to this discussion. Section 4 authorized the issuance of two different types of certificates: "First, a certificate authorizing the holder thereof to practice *osteopathy*; second, a certificate authorizing the holder thereof to practice *osteopathy and surgery.*"[1] (Italics ours.) Different requirements were established for the two certificates, notably the second, or "unlimited certificate", required a period of internship and additional testing.

Additionally section 17 of the 1919 act attempted to define osteopathy by providing that:

[T]he term osteopathy, as used in this act, shall be held to be the practice and procedure as taught and recognized by the regular colleges of osteopathy.

Laws of 1919, ch. 4, § 17, p. 16–17.

The question then becomes whether the 1919 statute changed the holding in *Bonham* that the holder of a certificate in osteopathy was not empowered to dispense drugs. We hold that it did not.

■ Woodson argues the legislature intended that osteopaths should be allowed to engage in any procedure taught by colleges of osteopathy, and offered evidence of courses taught both in 1919 and subsequent thereto. If the legislature had so intended, however, this would have been an unconstitutional delegation of legislative power to the Association of Osteopathic Colleges, to the faculties of

---

[1] For the sake of clarity the first type of certificate to practice osteopathy shall be referred to as a "limited certificate", the second certificate authorizing one to practice osteopathy and surgery shall be referred to as an "unlimited certificate".

schools of osteopathy, and to the writers of course catalogs. This would have authorized a nongovernmental group or nonstate agency to ultimately define osteopathy and determine what healing procedures an osteopath could employ, both then and in the future. Yet this is a nondelegable power which belongs solely to the state legislature. We made this abundantly clear in *State ex rel. Kirschner v. Urquhart,* 50 Wn.2d 131, 135–37, 310 P.2d 261 (1957), wherein we discussed accreditation of medical schools. There we held that when a legislature declares that schools on an *existing* list are deemed accredited and those not on such a list are not accredited, it is legislating. On the other hand, when it declares accredited schools shall be those *that may thereafter be established by some private authority,* it is clearly an unconstitutional delegation of legislative power. As *Kirschner* explained, at page 136, the vice is not that the legislature adopts a standard of accreditation fixed by recognized medical societies, but that it defers to the adoption of standards such bodies may make in the *future.* The same principles apply here. In a similar vein, *see State v. Crawford,* 104 Kan. 141, 177 P. 360, 2 A.L.R. 880 (1919); *State v. Emery,* 55 Ohio St. 364, 370, 45 N.E. 319 (1896); *Wagner v. Milwaukee,* 177 Wis. 410, 188 N.W. 487 (1922). Of recent date we have held the same view as to legislative attempts to adopt or acquiesce in *future* federal rules, regulations or statutes. *State v. Dougall,* 89 Wn.2d 118, 570 P.2d 135 (1977). *See also State v. Jordan,* 91 Wn.2d 386, 588 P.2d 1155 (1979).

█ Since an interpretation which holds a statute constitutional is to be preferred over one which renders it invalid (*Anderson v. Morris,* 87 Wn.2d 706, 716, 558 P.2d 155 (1976), *see also Hart v. Peoples Nat'l Bank,* 91 Wn.2d 197, 203, 588 P.2d 204 (1978)), we conclude the 1919 legislature did not intend to redefine "osteopathy" in unconstitutional terms. Rather, it meant to adopt the *Bonham* holding as to the older or "limited certificates".

It is of interest that the question was previously decided by this court at a time 58 years closer to the actual legislative action and thus presumedly more attuned to the legislative intent of that time. In *State v. Rust,* 119 Wash. 480, 206 P. 33 (1922), we stated at page 488:

The act of 1919 regulating the practice of osteopathy does not define the method or science except by reference. That reference is answered, however, we think, by the case of *State v. Bonham, supra,* and the more recent case of *In re Rust,* 181 Cal. 73, 183 Pac. 548 [(1919)].

*See also* the discussions of the 1919 statutes in *State v. Houck,* 32 Wn.2d 681, 203 P.2d 693 (1949) and *State v. Lydon,* 170 Wash. 354, 16 P.2d 848 (1932).

Furthermore, the legislature is presumed to know the existing state of the case law in those areas in which it is legislating. *State v. Fenter,* 89 Wn.2d 57, 62, 569 P.2d 67 (1977), and cases cited therein. This is particularly true where, as here, only 2 months elapsed between the *Bonham* decision and the introduction of the bill which was to become the 1919 statute. The 1919 osteopathic act was passed by the House on February 24, 1917, by the Senate on March 5, 1917, vetoed by the Governor, March 17, 1917, and passed over his veto, January 21, 1919. It is quite clear the legislature knew of the *Bonham* decision, and yet declined to clearly state that all osteopaths could dispense and employ the use of drugs. Rather, it authorized the issuance of a second new "unlimited certificate" to practice osteopathy and surgery, apparently in recognition of the fact that the field of osteopathy had expanded and that some osteopaths, by that time, were trained and qualified in the new procedures.

Consequently, a search of the curricula of osteopathic colleges for 1919 and subsequent years has no relevance to the type of practice authorized by the "limited certificate".

In 1946; petitioner Woodson received a "limited certificate" to practice osteopathy under the 1919 law. At that time his certificate did not authorize him to employ the use of drugs in his practice. That authorization was given only

to the holders of an "unlimited certificate" to practice osteopathy and surgery. Thus, the question is whether this statutory authorization was changed by the Laws of 1959, ch. 110, § 1. We hold it was not.

The 1959 statute stated:

> A certificate shall be issued by the director of licenses authorizing the holder thereof to practice osteopathy and surgery, including the use of internal medicine and drugs, and shall be the only type of certificate issued. All certificates to practice osteopathy or osteopathy and surgery, including the use of internal medicine and drugs, heretofore issued shall remain in full force and effect.

Woodson contends the foregoing amendment (1) recognized that all holders of osteopathic certificates under the previous dual licensing system had been authorized to administer drugs, and (2) guaranteed that holders of such earlier certificates, whether "limited" or "unlimited", could continue to administer drugs in the future. Woodson thus reads the statutory phrase "including the use of internal medicine and drugs" as applying to both "osteopathy" and "osteopathy and surgery". He argues that this is the only grammatically correct way to read the grandfathering sentence.

The Court of Appeals, on the other hand, agreed with the trial court that this key statutory phrase applied only to "osteopathy and surgery". If there were a question as to the authority of holders of "limited certificates" to use drugs in practice before 1959, the court apparently felt it was resolved against such holders by virtue of the grandfather clause language.

In our view, the grammatical argument is inconclusive with both Woodson and the State citing cases which ostensibly justify the manner in which they read the sentence from the 1959 act. *See, e.g., Martin v. Aleinikoff,* 63 Wn.2d 842, 846, 389 P.2d 422 (1964) (holding that where no contrary intention appears in a statute, qualifying words and phrases refer both grammatically and legally to the last antecedent); *contra, Witherspoon v. St. Paul Fire &*

*Marine Ins. Co.,* 86 Wn.2d 641, 648, 548 P.2d 302 (1976) (holding "that a comma separating a modifying clause from the clause immediately preceding is an indication that the modifying clause is intended to modify all the preceding clauses and not only the last antecedent one").

We hold the 1959 act merely altered the system of certification established by the 1919 act and grandfathered in existing certificates to the end that holders of "limited certificates" would not be required to sit for the surgery examination. It did not abolish the distinction between "limited" and "unlimited certificates" previously granted, and did not enlarge the scope of practice authorized for holders of "limited certificates". At best, it only provided that no "limited certificates" would be issued in the future.

■ Woodson provided this court with affidavits from some members of the 1959 legislature. It was done in an effort to establish that they were under the impression that holders of "limited certificates" could employ drugs. Legislative intent in passing a statute cannot be shown by depositions and affidavits of individual state legislators, however. *Pannell v. Thompson,* 91 Wn.2d 591, 598, 589 P.2d 1235 (1979); *Spokane v. State,* 198 Wash. 682, 687, 89 P.2d 826, 37 A.L.R. 927 (1939). At issue is the intent of the 1919 legislature as to whether osteopaths could employ the use of drugs; we are not concerned with the intent of some independent or isolated legislators. This is true whether one attempts to establish it by individual affidavits and whether the legislators attended the 1919 or 1959 session.

The courts below were correct in holding that osteopaths having only a "limited certificate" are not authorized to dispense drugs. We affirm the partial summary judgment granted respondents.

UTTER, C.J., BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., and DEIERLEIN and SOULE, JJ. Pro Tem., concur.