Honorable Randall K. Gaylord San Juan County Prosecuting Attorney P. O. Box 760 Friday Harbor, Washington 98250
Dear Prosecutor Gaylord:
By letter previously acknowledged, you have asked for our opinion on the following questions, which we have slightly paraphrased for clarity:
1. May a "rural county" use tax revenues generated under RCW 82.14.370 to fund the purchase and/or installation of fiber optic cable and optical switching electronics by a non-profit electrical cooperative for the purpose of extending broadband high-speed telecommunications service to the residents and businesses in the county?
2. If the answer to Question No. 1 is no, are there any circumstances in which a county could fund, using revenues derived from RCW 82.14.370, a facility owned by a private party (whether "for profit" or non-profit)?
3. Does a grant of funds derived from RCW 82.14.370 to a private entity always require the same level of joint ownership or control as required in a grant of lodging tax revenue as discussed in AGO 2000 No. 9?
 BRIEF ANSWER
A system of fiber optic cable and optical switching electronics owned and operated by a private company or cooperative is not a "public facility" as defined in RCW 82.14.370 and therefore could not be funded by a county with revenues from that source. The statute does not specify the extent to which a "public facility" must be publicly-owned in order to meet the "public facility" definition.
 ANALYSIS
RCW 82.14.370 authorizes a "rural county"[1] to impose a sales and use tax for described purposes, in addition to other taxes authorized by law.[2] The permitted uses of revenues derived from this tax are set forth in subsection (3) of the statute:
Moneys collected under this section shall only be used for the purpose of financing public facilities in rural counties. . . . For the purposes of this section, "public facilities" means bridges, roads, domestic and industrial water facilities, sanitary sewer facilities, earth stabilization, storm sewer facilities, railroad, electricity, natural gas, buildings, structures, telecommunications infrastructure, transportation infrastructure, or commercial infrastructure, and port facilities in the state of Washington.
RCW 82.14.370(3).[3] With this statutory language as background, we proceed to your questions:
1. May a "rural county" use tax revenues generated under RCW 82.14.370 to fund the purchase and/or installation of fiber optic cable and optical switching electronics by a non-profit electrical cooperative for the purpose of extending broadband high-speed telecommunications service to the residents and businesses in the county?
The background section of your opinion request makes it clear that this question derives from the request of a non-profit electrical cooperative for a county "grant", to be usedby the cooperative to purchase and/or install fiber optic cable and optical switching electronics so that county residents may receive broadband high-speed telecommunications services. Your first question breaks down into two parts: (1) whether fiber optic cable and optical switching electronics constitute "telecommunications infrastructure" and (2) whether, given that the proposal is for the purchase and/or installation by a private party and not by the county itself or another governmental entity, the proposal still meets the definition of "public facility".
As to the first part, it seems clear that fiber optic cable and optical switching electronics constitute "telecommunications infrastructure". Our dictionary defines "telecommunications" as "the science and technology of communication by electronic transmission of impulses, as by telegraphy, cable, telephony, radio, or television". Webster's IINew Riverside University Dictionary 1189 (1988). The same source gives the following definition for "infrastructure": "The basic facilities, equipment, and installations needed for the functioning of a system". Id. at 628. Since the stated purpose of acquiring and installing cable and switching devices, according to your question, is to provide high-speed broadband telecommunications, it is clear that the cable and switching equipment in question constitutes the "basic facilities, equipment, and installations" for a telecommunications system and therefore constitutes "telecommunications infrastructure".
If your question were about a proposal by the county to simply purchase or install such a "telecommunications infrastructure" for its own use or ownership, it would be quite easy, then, to simply answer "yes" to your first question.[4]
However, your question makes it clear that the proposal actually involves the acquisition or installation of telecommunication facilities by a private party who intends to provide services to the general public, and the county's role would not be that of owner, but that of financial benefactor, through providing tax revenues for the purpose.
Although RCW 82.14.370 is not absolutely explicit on the point, we are convinced that the term "public facilities" necessarily assumes a "facility" in which the ownership is "public" and not private. We note, first, that the list of facilities qualifying for use of revenues derived from the tax in question consists in great part of structures or facilities which are traditionally built and owned by government agencies rather than private parties. For instance, the list includes bridges, roads, water and sewer facilities, earth stabilization facilities, storm sewers, transportation infrastructure, and port facilities. RCW 82.14.370(3). The other items on the list-railroads, electricity, natural gas, buildings, structures, telecommunications infrastructure, and commercial infrastructure-vary considerably as to the extent to which they are traditionally owned or operated by government or by privately-owned concerns. None of the items on the list, however, are always (or automatically) a privately-owned facility.
Second, the term "public facility" as generally understood presupposes a facility owned by a public entity rather than by a private company or cooperative. The dictionary defines "public" as "maintained for or used by the people or community" or "connected with or acting on behalf of the people, community, or government". Webster's II New Riverside University Dictionary 951 (1988). Thus, even though RCW 82.14.370 does not spell out expressly that the "facilities" listed must be publicly-owned, that is implied by the use of the term "public".[5]
Finally, we apply the maxim that a statute is interpreted in such a way as to avoid rendering it unconstitutional. Woodson v. State, 95 Wn.2d 257, 623 P.2d 683
(1980). The state constitution prohibits most types of gratuitous transfers of public funds to support the activities of privately-owned entities. Article VIII, section 7 of the state constitution provides:
No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation.
The state Supreme Court has consistently held that this provision prohibits the gratuitous transfer of public funds or credit to private individuals or associations.[6] In the early case of Johns v. Wadsworth, 80 Wn. 352, 141 P. 892 (1914), the court invalidated a grant of county money to a private association for the purpose of holding a county fair. Although the court found that a county fair served a public purpose, it found that article VIII, section 7 nevertheless forbids carrying out that purpose through a gratuitous transfer of public funds to a private organization. See also Lassila v. City of Wenatchee, 89 Wn.2d 804,576 P.2d 54 (1978), invalidating the acquisition of land by a city for the purpose of reselling it to a private land developer in connection with an economic development plan. In light of the case law delineating the importance of protecting public funds from gratuitous transfer to private parties, we conclude the Legislature intended to imply, when listing the permissible uses of funds under RCW 82.14.370, that the "public facilities" in question must be publicly owned to be eligible for funding.
2. If the answer to Question No. 1 is no, are there any circumstances in which a county could fund, using revenues derived from RCW 82.14.370, a facility owned by a private party (whether "for profit" or non-profit)?
Our answer to your first question largely answers your second question also: A privately-owned facility is not a "public facility" as defined in RCW 82.14.370. To the extent your second question asks us to speculate about hypothetical projects or arrangements which might be funded under RCW 82.14.370, we must decline to do so. The statute itself provides the best guidance, and we cannot add to the analysis above without examining specific proposals.
3. Does a grant of funds derived from RCW 82.14.370 to a private entity always require the same level of joint ownership or control as required in a grant of lodging tax revenue as discussed in AGO 2000 No. 9?
Your third question refers in AGO 2000 No. 9, in which we concluded that a government expending lodging tax revenues for the support of a tourism-related facility must have at least a partial ownership interest in the facility. AGO 2000 No. 9
involved a different statute from the subject of your questions, which authorizes a different tax to be used for a different type of expenditures. In that sense, its reasoning is not directly applicable to this opinion. Your question does not outline any proposal involving joint public/private ownership of a facility, so we are not in a position to analyze how such a proposal would fare if the source of public funds were taxes collected under RCW82.14.370.
We trust the foregoing will be of assistance to you.
Sincerely,
JAMES K. PHARRIS Senior Assistant Attorney General (360) 664-3027
[1] The statute defines "rural county" as one with a population density of less than one hundred persons per square mile as determined by the Office of Financial Management each year. RCW82.14.370(5). For purposes of this opinion, we assume that any county under discussion meets this definition.
[2] The maximum tax authorized is 0.08% of the selling price (for a sales tax) or 0.08% of the value (for a use tax). RCW82.14.370(1). The tax in question is a "credit" against the state sales and use tax and is collected by the state Department of Revenue. RCW 82.14.370(2).
[3] In quoting subsection (3) of RCW 82.14.370, we omitted several procedural prerequisites imposed by the statute before a county can impose the tax. For purposes of this opinion, we will assume (as you requested) that a county has met all of these requirements.
[4] Because your questions do not include any proposals for the county to provide telecommunications services to the general public using the "infrastructure" in question, we do not here address whether a county has authority to provide such services.
[5] This point is strengthened somewhat by the fact that the original 1997 version of RCW 82.14.370 used the term "public facility" without providing any list of examples. Laws of 1997,ch. 366, § 3. The list of specific eligible public facilities wasadded when the statute was amended in 1999 under Laws of 1999,ch. 311, § 101 and was part of a Senate striking amendment. SenateJournal, 56th Leg. 1999 at 1564-65. We could discover no legislative history illuminating the intent behind the 1999 amendment, but the implication is that its purpose was to clarify the meaning of "public facility" by listing specific types of "public facilities" intended by the legislature to be eligible for funding under RCW 82.14.370. The 1999 amendments certainly do not suggest an intent to expand the term "public facility" to include facilities owned or operated by private parties.
[6] The constitution has been amended to permit certain specified exceptions to the prohibition in article VIII, section 7. The only amendment which appears to be relevant to this discussion is article VIII, section 10 (adopted as Amendment 91 to the constitution in 1997), which authorizes counties and certain other local governments to assist private parties in financing the installation of materials and equipment for the conservation or more efficient use of water, energy, or storm water or sewer services. We will not speculate as to whether there might be any overlap between this article and the "public facilities" mentioned in RCW 82.14.370, since the telecommunications facilities mentioned in your question do not appear to be designed for energy conservation.